UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

CAREER AGENTS NETWORK,
INC., a Michigan corporation,

        Plaintiff,

vs.

careeragentsnetwork.biz,
careeragentnetwork.biz, Lawrence R.
White, an individual, and AeroMedia
Marketing, Inc., a Michigan corporation,
        Defendants.

Case No. 2:09-cv-12269

Hon. Robert H. Cleland

<table>
<tr><td>Jaffe, Raitt, Heuer, and Weiss, P.C.<br>Attorneys for Plaintiff<br>Joan H. Lowenstein (P39422)<br>Michael S. Khoury (P34413)<br>201 S. Main Street, Suite 300<br>Ann Arbor, MI 48104<br>(734) 222-4776<br>jlowenstein@jaffelaw.com<br>mkhoury@jaffelaw.com</td><td>Clos, Russell & Wirth, P.C.<br>Attorneys for Defendants<br>Charles E. Clos (P43380)<br>Shannon L. Wirth (P58822)<br>35551 Ford Road, Suite 100<br>Westland, MI 48185<br>(734) 326-2101<br>cclos@lawyersmichigan.com<br>swirth@lawyersmichigan.com</td></tr>
</table>

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT PURSUANT TO RULE 56 OF THE FEDERAL RULES OF CIVIL PROCEDURE AND BRIEF IN SUPPORT THEREOF

NOW COME Defendants, careeragentsnetwork.biz, careeragentnetwork.biz, Lawrence R.

White, and AeroMedia Marketing, Inc., through their attorneys, Clos, Russell & Wirth, P.C., and file

its Motion for Summary Judgment Pursuant to Rule 56 of the Federal Rules of Civil Procedure. In

support of its Motion, Defendants rely upon its Brief in Support of Motion for Summary Judgment

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, filed concurrently herein.

        /s/ Charles E. Clos
        **Charles E. Clos (P43380)**
        **Shannon L. Wirth (P58822)**
        cclos@lawyersmichigan.com
        swirth@lawyersmichigan.com

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

CAREER AGENTS NETWORK,
INC., a Michigan corporation,

        Plaintiff,

vs.

careeragentsnetwork.biz,
careeragentnetwork.biz, Lawrence R.
White, an individual, and AeroMedia
Marketing, Inc., a Michigan corporation,

        Defendants.

Case No. 2:09-cv-12269

Hon. Robert H. Cleland

---

| Jaffe, Raitt, Heuer, and Weiss, P.C. | Clos, Russell & Wirth, P.C. |
|---|---|
| Attorneys for Plaintiff | Attorneys for Defendants |
| Joan H. Lowenstein (P39422) | Charles E. Clos (P43380) |
| Michael S. Khoury (P34413) | Shannon L. Wirth (P58822) |
| 201 S. Main Street, Suite 300 | 35551 Ford Road, Suite 100 |
| Ann Arbor, MI 48104 | Westland, MI 48185 |
| (734) 222-4776 | (734) 326-2101 |
| jlowenstein@jaffelaw.com | cclos@lawyersmichigan.com |
| mkhoury@jaffelaw.com | swirth@lawyersmichigan.com |

---

**BRIEF IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
PURSUANT TO RULE 56 OF THE
FEDERAL RULES OF CIVIL PROCEDURE**

# Table of Contents

Issues Presented ............................................................. ii

Controlling Authority ....................................................... iii

Table of Authorities ........................................................ iv

I.      Introduction ........................................................ 1

II.     Summary Judgment Standards ........................................ 1

III.    Statement of Facts .................................................. 2
        A.      Facts ...................................................... 2
                1.      The Parties ........................................ 2
                2.      History Between the Parties ........................ 2
                3.      Registration of Domain Names ...................... 3
        B.      Procedural History ......................................... 5

IV.     Law and Argument .................................................... 6
        A.      Summary Judgment Should Be Granted As Defendants' Domain Names and Website
                Content Are Protected Free Speech .......................... 6
                1.      Defendants' Websites Are Not Commercial Speech ...... 7
                2.      Plaintiff's Complaint Should Be Dismissed as Defendants' Website Contain
                        Protected Consumer Commentary ...................... 10
                3.      There Is No Likelihood of Confusion Between Defendants' Website and
                        Plaintiff ........................................... 11
        B.      Defendants' Use of Plaintiff's Mark is Fair Use and Nominative Fair Use .... 15
        C.      Plaintiff's Dilution Claim Must be Dismissed As It Is Not a Famous Mark .... 16
        D.      Plaintiff's Claims for Cybersquatting Under §1125(d) of the Lanham Act Must Be
                Dismissed .................................................. 17

IV.     Conclusion .......................................................... 20

## ISSUES PRESENTED

1. Whether Defendants' use of the Domain Names careeragentnetwork.biz and careeragentsnetwork.biz and website, which offers no products or services and provides no links to other sites which offer products or services, and which consists only of consumer commentary, have First Amendment protection against Plaintiff's claims under the Lanham Act.

2. Whether Defendants' use of the Domain Names, which identify the topic discussed on the website, and the website, which offers only an opinion and no products or services, is a fair use which requires dismissal of Plaintiff's claims under the Lanham Act.

3. Whether the mark of Plaintiff "Career Agents Network" was widely recognized by the general consuming public of the United States, when Plaintiff did not exist until six (6) weeks prior to Defendants' registration of the Domain Names.

4. Whether Defendants' registration of the Domain Names constitutes cybersquatting where there is no evidence of bad faith intent to profit from Defendants' use of Plaintiff's mark.

## CONTROLLING AUTHORITY

*Taubman v Webfeats*, 319 F3d 770, 775 (6th Cir 2003)

*Bosley Medical Institute, Inc. v Kremer*, 403 F3d 672 (9th Cir 2005)

15 U.S.C. §1125(c)(3)(A)(ii)

15 U.S.C. § 1125(c)(2)(A)

*Lucas Nursery and Landscaping, Inc. v Grosse*, 359 F3d 806 (6th Cir 2004)

# Table of Authorities

**Cases:**

*ACLU of Georgia v Miller*, 977 F Supp 1228, 1233 (ND Ga 1997) . . . . . . . . . . . . . . . . . . . . . . . 8

*Anderson v Liberty Lobby, Inc.*, 477 U.S. 242, 251-251, 91 L.Ed. 2d 202, 106 S.Ct.2505 (1986)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Anheuser-Busch v Balducci Publications*, 28 F3d 769, 776 (8th Cir 1994) . . . . . . . . . . . . . . . . . 6

*Bally Total Fitness Holding Corp v Faber*, 29 F Supp 1161, 1167 (CD Cal 1998) . . . . . . . . 8, 13

*Bose Corp. v Consumers Union*, 466 U.S. 485 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Bosley Medical Institute, Inc. v Kremer*, 403 F3d 672 (9th Cir 2005) . . . . . . . . . . . . . . . . 8-10, 15

*Century 21 Real Estate Corp. v Lendingtree*, 425 F.3d 211 (3d Cir. 2005) . . . . . . . . . . . . . . . . 16

*Champions Golf Club v The Champions Golf Club, Inc.*, 78 F3d 1111, 1116 (6th Cir 1996) . . . 11

*Cliffs Notes v. Bantam Doubleday*, 886 F2d 490, 494 (2nd Cir 1989) . . . . . . . . . . . . . . . . . . . . . . . . 6

*CPC Int'l v Skippy, Inc.,* 214 F.3d 456, 562 (4th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 14

*Daddy's Junky Music v Big Daddy's Family Music Ctr.*, 109 F3d 275, 280 (6th Cir 1997) . . . . 12

*ETW Corp. v Jireh Publ*, 332 F.3d 915, 920 (6th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Ford Motor Company v 2600 Enterprises*, 177 F Supp 2d 661 (ED Mich 2001) . . . . . . . . . . 9, 13

*International Stamp Art v USPS*, 456 F.3d 1270, 1274 (11th Cir. 2006) . . . . . . . . . . . . . . . . . . . 15

*Jackson v City of Columbia*, 194 F.3d 737, 745 (6th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*KP Permanent Make-Up v Lasting Impression I*, 543 U.S. 111 (2004) . . . . . . . . . . . . . . . . . . . 15

*Lamparello v Falwell*, 420 F.3d 309, 313 (4th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Lighthawk v Robertson*, 812 F Supp 1095, 1097-1101 (WD Wash 1993) . . . . . . . . . . . . . . . . . . 8

*LL Bean v Drake Publishers*, 811 F2d 26, 32-33 (1st Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . 6, 8

iv

*Lucas Nursery and Landscaping, Inc. v Grosse*, 359 F3d 806 (6th Cir 2004) . . . . . . . . . . . . . . . 17

*Lucasfilm v High Frontier*, 622 F Supp 931 (DDC 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Lucent Technologies v Lucentsucks.com,* 95 F Supp2d 528 (ED Va 2000) . . . . . . . . . . . . . . . . 13

*Mattel v MCA Records*, 28 F Supp 2d 1120, 1144-1145 (C.D. Cal. 1998) . . . . . . . . . . . . . . . . . 10

*Mattel, Inc. v Walking Mountain Prods.*, 353 F.3d 792, 810 (9th Cir. 2003) . . . . . . . . . . . . . . . 16

*New Kids on the Block v. News America Publ'g,* 971 F.2d 302, 307 (9th Cir. 1992) . . . . . . 11, 16

*New York Times v Sullivan*, 376 US 254 (1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Nissan Motor Co. v Nissan Computer Corp.,*, 378 F.3d 1002, 1016-1017 (9th Cir. 2004) . . . . . . 9

*Northland Ins Co v Blaylock*, 115 F Supp2d 1108 (D. Minn 2000) . . . . . . . . . . . . . . . . . . . . . . . 14

*Organization for a Better Austin v Keefe*, 402 U.S. 415 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . 6, 9

*People for the Ethical Treatment of Animals v Doughney*, 263 F3d 359 (4th Cir 2004) . . . . . . . . . . . . . 9

*Playboy v Welles*, 278 F.3d 796, 803-804 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Porous Media Corp v Pall Corp.*, 173 F3d 1109, 1119-1121 (8th Cir 1999) . . . . . . . . . . . . . . . . 10

*Procter & Gamble Co. v Bankers Trust Co.*, 78 F.3d 219 (6th Cir. 1996) . . . . . . . . . . . . . . . . . . . 9

*Reno v ACLU*, 521 U.S. 844 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Semco v Amcast*, 52 F3d 108, 111-112 (6th Cir 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 10

*Sporty's Farm v Sportsman's Market, Inc.*, 202 F3d 489 (2nd Cir. 2000) . . . . . . . . . . . . . . . . . . 18

*Stop the Olympic Prison v United States Olympic Comm.*, 489 F Supp 1112, 1124-1125 (SDNY 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Street v J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . 1

*Strick Corp. v Strickland*, 162 F Supp 372 (ED Pa 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Taubman v Webfeats*, 319 F3d 770, 775 (6th Cir 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10, 12

*The Network Network v CBS*, 54 USPQ 2d 1150, 1155 (CD cal 2000) .................... 13

*TMI, Inc. v Maxwell*, 368 F.3d 433 (5ᵗʰ Cir. 2004) .................................... 10

*Universal Communication Systems v Lycos, Inc.* .................................. 10, 11

*US Healthcare v Blue Cross of Greater Philadelphia*, 898 F2d 914, 927-939 (3d Cir 1990) . . . 10

*Wells Fargo & Co. v WhenU.com*, 293 F.Supp. 2d 734, 754 (E.D. Mich.2003) ............. 12

*Wynn Oil Co. v Thomas*, 839 F2d 1183, 1186 (6ᵗʰ Cir 1988) ........................... 11

## Federal Statutes:

15 U.S.C. § 1125(c)(2)(A) ..................................................... 16

15 U.S.C. §1125(a) ............................................................ 6

15 U.S.C. §1125(c)(3)(A)(ii) .................................................. 16

15 U.S.C. §1125(d) ............................................................ 6

15 U.S.C. §§ 1125(c)(1) ...................................................... 16

15 U.S.C. §§ 1125(c)(5) ...................................................... 16

15 USC 1114(1)(a) ............................................................. 7

15 USC 1125(a)(1)(B) .......................................................... 7

15 USC 1125(c)(4)(B) .......................................................... 7

## Other Authorities:

2006 Trademark Dilution Revision Act, Pub. L. No. 109-312, §2, 120 Stat. 1730 (Oct.6, 2006)
.................................................................................. 16

Federal Rules of Civil Procedure 56(c) ........................................... 1

Lanham Act 15 USC 1125(a) .................................................. 6, 7, 17

*Online Word of Mouth and Its Implications for Trademark Law* (Oct. 2007) . . . . . . . . . . . . . . . 14

*The Modern Lanham Act and the Death of Common Sense*, 108 Yale L.J. 1687, 1710-11 (1999)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

# I. **Introduction**

The claims in this matter arise out of the registration of two Internet domain names, to wit, careeragentsnetwork.biz and careeragentnetwork.biz (hereinafter referred to as "Domain Names") by Defendant AeroMedia Marketing, Inc. ("Defendant AeroMedia").[1]

The First Amendment to the United States Constitution bars Plaintiff's improper attempt to silence non-commercial commentary by the use of draconian measures. Further, Plaintiff's alleged trademark claims lack any legal or factual basis as the complaint alleges no cognizable trademark injury, first because there can be no likelihood of confusion (Defendant's website does not sell any product or service), secondly dilution law does not apply because Plaintiff's trademark is not famous and finally, the purported use of Plaintiff's mark constitutes fair use. As such, this Court should not assist Plaintiff in its attempt to use baseless litigation to suppress constitutionally protected critical commentary.

# II. **Summary Judgment Standards**

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one sided that one party may prevail as a matter of law. *Anderson v Liberty Lobby, Inc.*, 477 U.S. 242, 251-251, 91 L.Ed. 2d 202, 106 S.Ct.2505 (1986); see also, *Street v J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). There are no genuine issues of material fact with regard to the

---

[1] While Plaintiff claims that Defendant Lawrence White is individually liable, Defendant Aero Media is the registrant of the Domain Names. Lawrence White is listed on the registration merely as the human contact and agent of Aero Media. As such, the term "Defendant" refers to Defendant Aero Media, unless otherwise indicated. Although, the same arguments would apply even if Lawrence White were the registrant.

claims made by Plaintiff.

## III. <u>Statement of Facts</u>

**A.    <u>Facts</u>.**

### 1.    <u>The Parties</u>.

Plaintiff, Career Agents Network ("CAN"), is a Michigan corporation which came into existence on December 9, 2008, when the principals of another Michigan corporation known as "Platinum Black, Inc.", changed its name to Career Agents Network, Inc. Attached as **Exhibit A** is the Certificate of Name Change filed with the State of Michigan. The principals of Platinum Black are also the principals of Career Agents Network. Prior to December 9, 2008, "Career Agents Network" did not exist.

Plaintiff purports to be in the business of providing "recruiting and staffing training and support services" to businesses that recruit and place medical and technical personnel. However, none of the named Defendants have a legal or business relationship with CAN.

Defendant Lawrence White is an individual and the majority shareholder of Defendant AeroMedia. The Domain Names at issue ( careeragentsnetwork.biz and careeragentnetwork.biz) are domain names which were registered by Defendant AeroMedia, through its agent, Lawrence White.

### 2.    <u>History Between the Parties</u>.

In January 2008, Defendant Lawrence R. White ("Defendant White") executed a Purchase Agreement with an entity known as Health Career Agents, Inc. ("Health Career Agents"), a Missouri corporation engaged in the business of healthcare and medical recruiting. Pursuant to the Health Career Agents Purchase Agreement, Defendant White purchased a business opportunity to be an "owner/operator" of his own personnel recruiting business. This so-called "business in a box" would include training, software and support services and access to a network of other owner/operators and

2

development as well as training to twenty (20) other consultants who the owner/operator (Defendant White) may hire. In consideration for this "business opportunity" and entering into the Purchase Agreement, Defendant tendered payment of $49,900.00.[2]

Subsequent thereto, Defendant White soon discovered that the "business opportunity" was not as lucrative as represented. In the later months of 2008, Health Career Agents announced that it would be "transitioning" (selling?) the assets of Health Career Agents to a new entity to be known as Career Agents Network ("CAN"), the within Plaintiff.

As a result of dissatisfaction with Health Career Agents and the transitioning of Health Career Agents to Platinum Black and to its new name, "CAN," Defendant created a website to express an opinion on Plaintiff's "business opportunities" and to warn other prospective investors that financial success in this endeavor was questionable. See Affidavit of Lawrence R. White attached hereto as **Exhibit B**.

### 3. Registration of Domain Names.

On January 21, 2009 and January 22, 2009, Defendant AeroMedia registered the Domain Names with DIRECTI, a commercial registrar of domain names.[3] As part of the registration process Defendant AeroMedia opted for the free service of Privacy Protect.[4] Privacy Protect is a commonly used service that keeps the names of the registrant of the domain names from direct public access to limit the amount of spam, junk mail, and unsolicited contact.[5] Under Privacy Protect if a third party seeks to discover the

---

[2] Defendant White's business relationship with Health Career Agents is not a part of the within litigation and neither party has asserted any claims or defenses relative to this business arrangement.

[3] See Domain Registries attached hereto as **Exhibit C**.

[4] See Deposition of Lawrence White attached hereto as **Exhibit D**, pp. 19-20.

[5] Id.

identity of the registrant, the registrant is provided the relevant contact information from Privacy Protect however, there is no direct contact provided to the person seeking the registrant's identity.[6] Subsequent to registering the Domain Names, Defendant AeroMedia established website hosting accounts with hosting providers.

Once the hosting accounts were established, Defendant AeroMedia was then able to upload its hyper-text mark-up language (html) files for publication and viewing on the Internet. The website consisted of a single page of text as set forth below in its entirety:

WARNING
**If you are considering investing in
this "opportunity", be aware that it is
highly improbable that you will earn
enough to cover your investment. If
you proceed with this company you
have been warned by those that
know and have lost $20,000 -$150,000
by trusting them and their "plan"[7]**

The information set forth above and attached as **Exhibit E** is the entire website[8]. While the website offers an "opinion" and is admittedly "critical," it does <u>NOT</u>:

1. contain any links to any other website[9];
2. offer to sell a product or service;
3. attempt to steer anyone to a competitor, and

---

[6]Id.

[7]For purposes of this motion Defendants encourage the court to consider the content of the website itself because Plaintiff relies heavily on the "content" issue in its complaint and is central to Plaintiff's claim. *Jackson v City of Columbia*, 194 F.3d 737, 745 (6th Cir. 1999).

[8]The website previously read: "Warning   You will not make enough money in the business of recruiting to recover the money their "plan" is going to cost you! Many people feel they were "scammed" by the promoters of this offering in a similar deal.  You have been warned!!!".

[9]See Deposition Transcript of Lawrence R. White attached hereto as **Exhibit D**, page 26.

4.      does <u>not</u> conclusively state that the reader will not earn enough to cover its investment, rather states that it is "highly improbable."

Subsequent to posting this website, Defendant AeroMedia employed a search engine optimizer (SEO) to assist in raising the website's presence in search engines such as Google, Yahoo, MSN and other search tools. The effect of utilizing the SEO is that when a search term was entered with the string words, "career agents," "career agents network," or other similar positioning of generic keywords, it would list Defendants' website among the top listings of the search results. If a searcher clicked on Defendants' link, he would have been taken to the one page critical commentary consisting of Defendants' opinion and warning.

At the times that these domain names were registered on January 21, 2009 and January 22, 2009, the Plaintiff had not attempted to register these domain names. Further, Plaintiff had not taken any action to register Career Agents Network, or any variation thereof, as a trademark. In fact, it was not until February 5, 2009, two full weeks after Defendant AeroMedia registered the Domain Names, that Plaintiff sought to trademark its name with the USTPO. See attached **Exhibit F**.

## B.     <u>Procedural History</u>.

On June 12, 2009, Plaintiff filed an *in rem* Complaint for Injunctive Relief against the Domain Names (careeragentsnetwork.biz and careeragentnetwork.biz) alleging a single count of cybersquatting under the Lanham Act. Plaintiff also sought issuance of a Temporary Restraining Order, which was granted, pending a hearing on June 26, 2009. On June 30, 2009, this Court issued a Preliminary Injunction Order which places the Domain Names on hold.

On July 16, 2009, Plaintiff filed a First Amended Complaint adding two additional parties to wit, AeroMedia Marketing, Inc. and Lawrence R. White, seeking damages. In its Amended Complaint

Plaintiff alleges two (2) separate statutory violations of the Lanham Act[10], identified as follows:

1.  Cybersquatting in violation of 15 U.S.C. §1125(d);

2.  Trademark Infringement, 15 U.S.C. §1125(a).

As will be demonstrated, none of Plaintiff's claims can be supported and summary judgment should be granted.

## IV. Law and Argument

**A.    Summary Judgment Should Be Granted As Defendants' Domain Names and Website Content Are Protected Free Speech**

To begin with, Plaintiff's action to enforce its trademark necessarily implicates First Amendment concerns. Even an action by a private party seeking damages or injunctive relief invokes action of the court, a governmental body, and thus implicates the First Amendment. *New York Times v Sullivan*, 376 US 254 (1964); *Organization for a Better Austin v Keefe*, 402 US 415 (1971). Where a defendant is engaged in non-commercial speech, the mere application of trademark law may violate the First Amendment[11]. *LL Bean v Drake Publishers*, 811 F2d 26, 32-33 (1st Cir. 1987). Further, First Amendment interests must be weighed as a factor in determining whether a trademark violation has occurred. *Anheuser-Busch v Balducci Publications*, 28 F3d 769, 776 (8th Cir 1994).

Plaintiff's alleged claims of trademark violation under the Lanham Act are first and foremost barred by the First Amendment. In this case, Plaintiff seeks to use the trademark laws to silence unwanted critical commentary about its business. However, the only way in which Plaintiff's alleged

---

[10] 15 USC 1125(a)

[11] Even if a trademark has been used in a commercial context, courts are required to construe trademark laws narrowly to avoid impinging on First Amendment Rights. *Cliffs Notes v. Bantam Doubleday*, 886 F2d 490, 494 (2nd Cir 1989).

trademarked name is used on Defendant's website is to identify the subject matter of the commentary published on this site[12]. The comments on the website consist of noncommercial speech which is fully protected by the First Amendment.

## 1.    Defendants' Websites Are Not Commercial Speech.

An analysis of whether Defendant's use of Plaintiff's trademark is commercial or non-commercial speech is important in trademark infringement actions. First, Congress has limited the application of the Lanham Act to cases involving commercial speech[13]. The Lanham Act[14], by its very terms applies only to marks used "in connection with the sale, offering for sale, distribution or advertising of any goods or services. . .". As such, the first inquiry is to determine whether Defendant used the Domain Names and website in connection with the marketability of any goods or services.

Although Plaintiff alleges, vaguely and conclusively, that Defendants have engaged in a commercial use[15], a plain review of the content of Defendant's website reveals that Defendant's use of the website was purely non-commercial. The website contains no advertisements and does not sell or promote any goods or services.[16] Further, there are no links on the website to any other site that sells or promotes any goods or services.[17]

---

[12]See **Exhibit D**, page 25.

[13]See 15 USC 1125(a)(1)(B) and (c)(4)(B).   See also, *Semco v Amcast*, 52 F3d 108, 111-112 (6th Cir 1995) (quoting extensively from the legislative history).

[14]15 USC 1114(1)(a).

[15]In its Complaint at paragraph 27, Plaintiff alleges trademark infringement by the defendant in the following ways: "Defendant has used their confusionally similar mark in connection with the marketing of their services . . ."   Plaintiff also alleges at paragraph 27 that Defendants' "services" are likely to cause confusion or mistake or deceive the consumer.

[16]See **Exhibit B**.

[17]See **Exhibit D**, p. 26.

Courts have not hesitated to afford full First Amendment protection against a trademark holder's claims of infringement when an action is brought against a plainly non-commercial use of a trademark for political or consumer commentary.[18] Indeed, if courts were to allow suits like Plaintiff's to proceed, any company dissatisfied with a bad review of its products or services–whether in a website, or in a printed newspaper or magazine–would be able to bring a trademark action to halt publication of the unwanted review.

This case is strikingly similar to *Taubman v Webfeats*, 319 F3d 770, 775 (6th Cir 2003). In that case, the defendant established a website praising a local shopping mall at www.shopsatwillowbend.com, using the trademarked name of the mall both on the website itself and in the domain name. After the shopping mall owner sued him over the first website, he created a second site to criticize the shopping mall's owner at www.taubmansucks.com, which contained the trademark of plaintiffs. The court ruled that "[a]s long as [defendant] has no commercial links on either of his websites . . . we find no use 'in connection with the advertising' of goods and services to enjoin, and the Lanham Act cannot properly be invoked."

Similarly, in *Bosley Medical Institute, Inc. v Kremer*, 403 F3d 672 (9th Cir 2005) defendant created the website www.bosleymedical.com to criticize Plaintiff, who had a registered trademark for "Bosley Medical." Like the within Defendants, the bosleymedical.com website did not offer any goods or services. It did, however, provide a link to another website critical of Bosley Medical which did

---

[18]See *L.L.Bean v Drake Publishers*, 811 F2d 25, 33 (1st Cir 1987); *ACLU of Georgia v Miller*, 977 F Supp 1228, 1233 (ND Ga 1997); *Bally Total Fitness Holding Corp v Faber*, 29 F Supp 1161, 1167 (CD Cal 1998); *Lighthawk v Robertson*, 812 F Supp 1095, 1097-1101 (WD Wash 1993); *Stop the Olympic Prison v United States Olympic Comm.*, 489 F Supp 1112, 1124-1125 (SDNY 1980). See also, *Lucasfilm v High Frontier*, 622 F Supp 931 (DDC 1985) (ruling on non-constitutional grounds).

contain advertisements of Bosley's competitors. The court dismissed plaintiff's claims and granted summary disposition of the plaintiffs' claims under the Lanham Act, finding that there was no commercial use of plaintiff's trademarks. In so doing, the court rejected plaintiff's arguments that the site was commercial because it contained links to other sites that contained advertising and there was no evidence that defendant sought to profit or extort money from plaintiffs, and finally the website did not prevent Internet users from obtaining plaintiff's goods and services. In so ruling, the court rejected the notion that the Lanham Act is violated when a party uses the trademark of another as its domain name simply because customers may be deterred from reaching the trademark holder's website[19]. See also, *Ford Motor Company v 2600 Enterprises*, 177 F Supp 2d 661 (ED Mich 2001).

Further, the allegation of commercial injury to Plaintiff's business does not make Defendant's website commercial speech. *Nissan Motor Co. v Nissan Computer Corp.*, 378 F.3d 1002, 1016-1017 (9th Cir. 2004). In *Organization for a Better Austin v Keefe*, 402 U.S. 415 (1971), the Court held that it was an improper prior restraint to enjoin the Defendants from disseminating pamphlets about the Plaintiff realtor that alleged that Plaintiff was engaged in "block busting" and "panic peddling." In so ruling, the Court stated: "No prior decisions support the claim that the interest of an individual in being free from public criticism of his business practices in pamphlets or leaflets warrants the use of the injunctive power of a court." *Id.* at 419. Similarly, in *Procter & Gamble Co. v Bankers Trust Co.*, 78 F.3d 219 (6th Cir. 1996), the Sixth Circuit invalidated as an abuse of discretion a preliminary injunction against the publication of Business Week magazine, and squarely rejected "private litigants' . . . commercial self-interest" as a basis for a prior restraint, thus overturning a preliminary injunction that

---

[19]*Bosley*, supra at 679 (rejecting the holding in *People for the Ethical Treatment of Animals v Doughney*, 263 F3d 359 (4th Cir 2004).

had been issued in favor of a company whose private documents had been discussed in a news publication. *Id.* at 225.

2.   **Plaintiff's Complaint Should Be Dismissed as Defendants' Website Contain Protected Consumer Commentary**.

Consumer commentary is core speech protected by the First Amendment, *Bose Corp. v Consumers Union*, 466 U.S. 485 (1984), and the First Amendment fully applies to Internet communications. *Reno v ACLU*, 521 U.S. 844 (1997). Criticism of a company's products or business practices has been found to be protected free speech[20]. More specifically, the federal appellate courts have uniformly held that websites like Defendants–which publish commentary about markholder's products or services rather than compete with them–are protected against attempts to silence that commentary through the trademark laws. *See, e.g., Universal Communication Systems v Lycos, Inc., supra; Bosley Medical Inst. v Kremer*, 403 F.3d 672, 679-80 (9th Cir. 2005); *Lamparello v Falwell*, 420 F.3d 309, 313 (4th Cir. 2005); *TMI, Inc. v Maxwell*, 368 F.3d 433 (5th Cir. 2004); *Taubman v WebFeats*, 319 F.3d 770 (6th Cir. 2003); *CPC Int'l v Skippy, Inc.*, 214 F.3d 456, 562 (4th Cir. 2000).

As these courts have recognized,

> "it is important that trademarks not be 'transformed from rights against unfair competition to rights to control language." Lemley, *The Modern Lanham Act and the Death of Common Sense*, 108 Yale L.J. 1687, 1710-11 (1999). Such a transformation would diminish our ability to discuss the products or criticize the conduct of companies that may be of widespread public concern and importance."

*Id.*, 214 F.3d at 462.

As noted in the 9th Circuit, "much useful social and commercial discourse would be all but impossible

---

[20]*Semco v Amcast,* 52 F3d 108, 111-114 (6th Cir 1995); *Porous Media Corp v Pall Corp.,* 173 F3d 1109, 1119-1121 (8th Cir 1999); *US Healthcare v Blue Cross of Greater Philadelphia,* 898 F2d 914, 927-939 (3d Cir 1990); *Mattel v MCA Records,* 28 F Supp 2d 1120, 1144-1145 (C.D. Cal. 1998).

if speakers were under threat of an infringement lawsuit every time they made reference to a person, company or product by using its trademark." *New Kids on the Block v. News America Publ'g*, 971 F.2d 302, 307 (9th Cir. 1992).

Defendant used the Domain Names truthfully, only to denote, accurately, the page where Plaintiff is discussed[21]. The use of trademarks solely to identify the subject matter of consumer commentary on a website, therefore, is not a use against which the trademark laws are designed to protect. Further, the website is dedicated only to expressing an opinion about Plaintiff. "Any injury to [Plaintiff] ultimately arises from its being criticized on the website." *Universal Communication Sys.*, 478 F.3d at 423; *see also Bosley*, 403 F.3d at 680 ("Any harm to Bosley arises not from a competitor's sale of a similar product under Bosley's mark, but from Kremer's criticism of their services. Bosley cannot use the Lanham Act either as a shield from Kremer's criticism, or as a sword to shut Kremer up."). As far as the trademark laws are concerned, it does not matter whether the criticism directed at the markholder is considered legitimate or illegitimate—or even whether it is true or false. To the contrary, "if the injury alleged is one of critical commentary, it falls outside trademark law, whether the criticism is warranted or unwarranted." *Universal Communication Sys.*, 478 F.3d at 424.

**3.     There Is No Likelihood of Confusion Between Defendants' Website and Plaintiff.**

Even if Defendants' use of Plaintiff's mark was commercial, a violation of the Lanham Act occurs only if the use creates a likelihood of confusion among consumers. "Whether there is a likelihood of confusion is a mixed question of law and fact." *Champions Golf Club v The Champions Golf Club, Inc.*, 78 F3d 1111, 1116 (6th Cir 1996), citing *Wynn Oil Co. v Thomas*, 839 F2d 1183, 1186 (6th Cir 1988). Trademark injury arises from an improper use of a mark to denote the source of similar

---

[21]See **Exhibit D**, page 25.

products sold by others–or, in the case of dilution, to denote the source of dissimilar goods. *Wells Fargo & Co. v WhenU.com*, 293 F.Supp. 2d 734, 754 (E.D. Mich.2003). Plaintiff cannot establish the essential elements of an infringement claim under the Lanham Act; that is that the purported infringement by Defendants creates a likelihood of confusion on the part of the consumer as to the source of the goods or services. *Daddy's Junky Music v Big Daddy's Family Music Ctr.*, 109 F3d 275, 280 (6th Cir 1997).

While Plaintiff's Complaint alleges that Defendants Aero Media and White have used Plaintiff's mark "in connection with the marketing of their services," a review of the website reveals that Defendant offered no goods or services on its website, nor links to any other sites that offer goods or services. Further, no blogs that refer to or link to the website, contain any reference or links to any goods or services of Defendants, or any third party.

In fact, it is difficult to imagine how a consumer would even reach either Defendant. There was no "contact" link on the website.[22] Further, because of Defendant's use of Privacy Protect, there was no contact information available to the general public, even if a consumer researched the registrant of the Domain Names. Tellingly, Plaintiff had to file a lawsuit and obtain a Court Order to determine the identity of the registrant of the Domain Names. As such, it is inconceivable that a less sophisticated or casual consumer could somehow contact Defendant about any goods or services.

Further, the mere existence of the website, absent any offering of goods or services, cannot form the basis for Plaintiff's cause of action under the Lanham Act. "It is irrelevant whether customers would be confused as to the origin of the website, unless there is confusion as to the origin of the respective products." *Taubman*, supra at 776.

---

[22]See **Exhibit D**, p. 26.

Further, the fact that the name of Plaintiff's business appears in the domain names registered by Defendant to denote the subject matter of the website is not determinative. In *Strick Corp. v Strickland*, 162 F Supp 372 (ED Pa 2001) the court found no likelihood of confusion because, once an Internet user reached the defendant's website, it would be crystal clear that the Strick company was not the sponsor of the strick.com website. The court explained that the claim of likelihood of confusion was based upon the doctrine of "initial interest confusion," namely the concern that an internet user might be misled into coming to the "junior" user's website, and then either decide to buy goods from the junior user, or lose interest in looking harder for the trademark holder. Id at 377. However, the court refused to find a trademark violation in the context of the internet, explaining:

> [A]ny initial confusion that arises form Defendant's use of his strick.com domain site, specifically, that consumers will realize that they are at the wrong site and will go on an Internet search engine to find the right one, is not enough to be legally significant. . . It is clear that Internet surfers are inured to the false starts and excursions awaiting them and are likely to be dissuaded, when, after taking a stab at what they think is the most likely domain name for a particular website guess wrong and bring up another's webpage. [Going on to reject plaintiff's dilution claim, ] It is clear that nothing in trademark law requires that title to domain names that incorporate trademarks or portions of trademarks be provided to trademark holders. To hold otherwise would create an immediate and infinite monopoly to all famous mark holders on the Internet, by which they could lay claim to all .com domain names which arguably are 'the same' as their mark. The Court may not create such property rights-in-gross as a matter of dilution law . . . Trademark law does not support such a monopoly. Id at 380.[23]

Similar principles have been applied where the reason for registering a domain name including the trademark of another is to comment on the trademark holder. A number of those cases involved domain names including the trademark accompanied by the work "sucks."[24] However, the court also

---

[23]See also, *The Network Network v CBS*, 54 USPQ 2d 1150, 1155 (CD cal 2000) (there is a difference between inadvertently landing on a website and being confused.).

[24]*Lucent Technologies v Lucentsucks.com*, 95 F Supp2d 528 (ED Va 2000); *Bally Total Fitness Holding Corp. v Faber*, 29 F Supp2d 1161 (CD Cal 1998); See also, *Ford Motor*

found no likelihood of confusion in *Northland Ins Co v Blaylock*, 115 F Supp2d 1108 (D. Minn 2000) where Defendant registered the name "northlandinsurance.com", the name of the plaintiff's business. The website criticized plaintiff's business. The court found that the website was not likely to cause confusion despite the fact that the name of plaintiffs business was the domain name, rejecting plaintiff's "initial interest confusion" argument.

Moreover, there is nothing illegitimate or confusing about the fact that Defendants' domain names page appears in a list of search engine results obtained when entering Plaintiff's mark as a search term, because, as courts have recognized, Internet users use search engines to find critiques of trademark holders as well as the markholders' own websites. *Playboy v Welles*, 278 F.3d 796, 803-804 (9th Cir. 2002). To be sure, Plaintiff might prefer to squelch public access to Defendants' website by excluding it from search engine results, but such suppression is not a proper function of trademark law. *CPC Int'l v Skippy, Inc.*, 214 F.3d 456, 462 (4th Cir. 2000). *See generally* Goldman, *Online Word of Mouth and Its Implications for Trademark Law* (Oct. 2007), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1020695.

Reviewing the fifty word website would anyone possibly be deceived or believe that CAN has created this website to criticize itself? Of course not. Any reasonable consumer actually looking to learn of Plaintiff or go to its website would immediately realize that Defendants' website is not the home page of Plaintiff, or even sponsored by Plaintiff.

References to Plaintiff's marks on Defendant's website "cannot mislead consumers into buying a competing service" as no commercial service or product is offered–no customer will mistakenly

---

*Company v 2600 Enterprises*, 177 F Supp 661, 664 (ED Mich 2001).

purchase services from Defendant[25] under the belief that the service is an alternate competitor—"[t]he dangers that the Lanham Act was designed to address are simply not at issue in this case." *Bosley,* 403 F.3d at 679-80; *see also Parker v Google, Inc.*, 422 F.Supp. 2d 492 (E.D. Pa. 2006). As such, summary judgment is warranted.

## B.    Defendants' Use of Plaintiff's Mark is Fair Use and Nominative Fair Use.

Even assuming the impossible–that Plaintiff can prove trademark injury, likelihood of confusion, and dilution–its trademark claims would nevertheless fail because it cannot overcome a fair-use or nominative-fair-use defense. *KP Permanent Make-Up v Lasting Impression I,* 543 U.S. 111 (2004). Under settled law, a fair-use defense is established if the defendant used the plaintiff's mark (1) in its descriptive sense; and (2) in good faith. *ETW Corp. v Jireh Publ,* 332 F.3d 915, 920 (6th Cir. 2003). The first element is satisfied here because Defendant's website does not use Plaintiff's mark as a trademark–he does not use the mark to identify any product sold by Defendant, but only as a descriptive term in consumer commentary. "Where, as here, use of the mark, as 'the only symbol reasonably available [to denote plaintiff as the subject of the commentary] does not attempt to capitalize on consumer confusion or to appropriate the cachet' of the mark holder, it fails to 'implicate the source-identification function that is the purpose of trademark.'" *International Stamp Art v USPS,* 456 F.3d 1270, 1274 (11th Cir. 2006) (quoting *New Kids on the Block,* 971 F.2d at 308).

Secondly, the good-faith element is satisfied because Defendant did not "intend[] to trade on the good will of the trademark owner by creating confusion as to the source of the goods or services." *Id.*. As discussed above, the possibility of consumer confusion is not implicated here, because the parties are <u>not</u> competitors. Because both elements of fair use are satisfied, the use of the marks "cannot

---

[25]Of course, Defendants' website is purely non-commercial.

possibly constitute infringement." *Id.*

Courts reach the same conclusion under the label of nominative fair use. *See Century 21 Real Estate Corp. v Lendingtree*, 425 F.3d 211 (3d Cir. 2005); *Mattel, Inc. v Walking Mountain Prods.*, 353 F.3d 792, 810 (9th Cir. 2003); *New Kids on the Block*, 971 F.2d at 307. Although the Sixth Circuit has never decided whether to adopt the doctrine of nominative fair use, Congress has written the concept into the Lanham Act—"fair use includ[es] a nominative or descriptive fair use . . . [and] includ[es] use in connection with . . . identifying and parodying, criticizing, or commenting" upon the mark owner or its goods or services."(Emphasis added). 15 U.S.C. §1125(c)(3)(A)(ii). As such, Defendants' use of the purported trademark falls squarely within the parameters of this provision and the use of Plaintiff's marks are used only as reasonably necessary to identify Plaintiff's services. Defendant does nothing to suggest sponsorship or endorsement by Plaintiff. *Therefore,* Plaintiff's claims must be dismissed for these reasons as well.

## C.    Plaintiff's Dilution Claim Must be Dismissed As It Is Not a Famous Mark.

Plaintiff's claims of federal trademark dilution must also be dismissed because Plaintiff cannot possibly prove a key element of a claim for dilution—that its trademark is "famous." The cause of action for dilution is available only to "the owner of a famous mark," 15 U.S.C. §§ 1125(c)(1), 1125(c)(5). Under the Lanham Act, as amended by the 2006 Trademark Dilution Revision Act, Pub. L. No. 109-312, §2, 120 Stat. 1730 (Oct.6, 2006), "a mark is famous [only] if it is widely recognized by the general consuming public of the United States." 15 U.S.C. § 1125(c)(2)(A). While Plaintiff may assert that its trademark is "famous," the statutory definition makes such an allegation impossible. Plaintiff did not even exist until six (6) weeks prior to the registration of the Domain Names. It had no presence on the World Wide Web other than a domain name which directed internet users to a website that said nothing

more than "Career Agents Network", and nothing more.

## D. Plaintiff's Claims for Cybersquatting Under §1125(d) of the Lanham Act Must Be Dismissed.

It is axiomatic that a disgruntled customer who uses a Plaintiff's mark to register a complaint or gripe, is not liable under the anti-cybersquatting provisions of the Lanham Act (ACPA). In *Lucas Nursery and Landscaping, Inc. v Grosse*, 359 F3d 806 (6th Cir 2004), the homeowner defendant registered the domain name "lucasnursery.com" wherein she criticized Plaintiff's work at her home and her unfavorable experience. The court in dismissing Plaintiff's Complaint stated that in order for liability to attach under ACPA a court must initially conclude that defendant's acts constitute "bad faith intent to profit" from the use of a mark held by another. *Id.* at 809.

Simply stated, the acts of Defendants simply do not constitute cybersquatting as alleged. As succinctly noted in *Lucas Nursery* at 810:

> The paradigmatic harm that the ACPA was enacted to eradicate – the practice of cybersquatters registering several hundred domain names in an effort to sell them to the legitimate owners of the mark – is simply not present in any of Grosse's actions. In its report on the ACPA, the Senate Judiciary Committee distilled the crucial elements of bad faith to mean an "intent to trade on the goodwill of another's mark." S. Rep. No. 106-140, at 9. *See also, Ford Motor Co. v Catalanotte,* 342 F.3d 543, 549 (6th Cir. 2003) ("Registering a famous trademark as a domain name and then offering it for sale to the trademark owner is exactly the wrong Congress intended to remedy when it passed the ACPA.").

In this matter, as in *Lucas Nursery, Id.*, at the time defendant created its website, Plaintiff did not have an online offering and thus defendant's intent in creating the website could not have been to divert customers from Plaintiff's non-existent on-line offering[26]. Further, there can be no possibility as

---

[26]At the time Defendant Aero Media registered the Domain Names and posted its website, Plaintiff had a registered domain name, but the website had no content. The website was only a blank white screen with the words "Career Agents Network" only. There was no information provided, no links, and no other offering.

17

to confusing browsers as to the sponsorship of the site as it cannot possibly be argued that people would believe Plaintiff was criticizing itself.

Next, defendant never offered to sell the site to Plaintiff[27] nor did defendant provide misleading contact information when he registered the domain name.[28] Finally, just as in *Lucas Nursery*, the defendant did <u>not</u> acquire any additional domain names containing the marks of another which would be indicative of either an intent to sell such names to other entities whose trademarks were identical or similar or exploit them for other uses.

There are nine (9) separate factors the court considers in determining whether the defendant acted in "bad faith." *Sporty's Farm v Sportsman's Market, Inc.*, 202 F3d 489 (2nd Cir. 2000). However, as stated by the court in Lucas:

> The role of the reviewing court is not simply to add factors and place them in particular categories, without making some sense of what motivates the conduct at issue. The factors are given to courts as a guide, not as a substitute for careful thinking about whether the conduct at issue is motivated by a bad faith intent to profit.

In *Lucas*, the Court found the actions of the defendant "were undertaken in the spirit of informing fellow consumers about the practices of a landscaping company that she believed had performed inferior work on her yard." Defendant did precisely the same thing. It informed fellow would-be investors about the practices of Plaintiff. "The practice of informing fellow consumers of one's experience with a particular service provider is surely not inconsistent with [the ACPA]." *Id* at 811.

Nevertheless, a review of the bad faith factors reveals that they weigh in favor of Defendants. The first four (4) factors provide a basis on which a defendant may have registered a domain name of

---

[27]See **Exhibit E**, p. 46.

[28]See **Exhibit C** and **Exhibit D**, pp. 18-19.

18

another mark holder and exculpate a defendant from bad faith intent.[29]  Importantly, as the defendant

in Lucas, Defendant AeroMedia used the website for non-commercial purposes.  The other five factors,

if proven, indicate a bad faith intent.

These factors, and as applied to the case before the court, are as follows:

► Whether the defendant seeks to divert customers from the mark holder's online location either in a way that could harm goodwill or tarnish or disparaging the mark by creating confusion regarding the sponsorship of the site;
    Comment:        Defendants' website does not seek to direct customers from the mark's holder[30] and there can be no confusion that Plaintiff (the mark holder) is sponsoring this critical commentary.

► Whether there has been an offer to transfer or sell the site for financial gain;
    Comment:        There has never been any offer by any defendants to sell the site for financial gain.[31]

► Whether the defendants provided misleading contact information when registering the domain names, and
    Comment:        The domain names were in fact registered properly by Defendant AeroMedia.[32]

► Whether the defendant has acquired multiple domain names which may be duplicative of the marks of others.
    Comment:        Defendant AeroMedia has not acquired multiple domain names which include the mark of another.[33]

---

[29]Defendant Aero Media admittedly did not have any trademark rights in the domain name and it does not consist of any Defendant's legal name.  Further, Defendant did not use the Domain Name for offering of any goods or services.

[30]**Exhibit B.**

[31]**Exhibit D**, p. 46.

[32]**Exhibit D**, p.18.  See also **Exhibit F** - Domain Registries.

[33]Defendant Lawrence White testified that he has posted websites at slashburnpoison.com, pinkstinks.org, wheresthecure.com and a blog notebook that rails against airport food.  See **Exhibit D**, pp. 42-43.

▶ Whether the mark is distinctive and famous.

Comment: Plaintiff's mark has only been in existence for 6 weeks before Defendants registered the domain names and Plaintiff's mark is not famous, within the meaning of subsection (c)(1) of Section 43.

## IV. Conclusion

Based on the above, it is clear that summary judgment of Plaintiff's claims for trademark infringement and cybersquatting is proper. Defendants have used Plaintiff's trademark only in a non-commercial way, to criticize the business practices of Plaintiff. Defendant's critical commentary is protected by the First Amendment and cannot form the basis for a claim of trademark infringement, nor the basis for the issuance of injunctive relief. Further, there is no likelihood of confusion by consumers and Defendants' website is distinguishable from Plaintiff's official homepage. Finally, Plaintiff cannot maintain an action for cybersquatting as bad faith, a necessary element, is non-existent. As such, Defendant is entitled to summary judgment.

/s/ Charles E. Clos
**Charles E. Clos (P43380)**
**Shannon L. Wirth (P58822)**
35551 Ford Road, Suite 100
Westland, MI 48185
(734) 326-2101
cclos@lawyersmichigan.com
swirth@lawyersmichigan.com
Attorneys for Defendants

## Certificate of Service

The foregoing Motion and Brief in Support of Defendants' Motion for Summary Judgment Pursuant to Rule 56 of the Federal Rules of Civil Procedure was electronically filed on December 22, 2009. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Charles E. Clos
Charles E. Clos (P43380)