# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF MICHIGAN

CAREER AGENTS NETWORK,
INC., a Michigan corporation,

        Plaintiff,

vs.

careeragentsnetwork.biz,
careeragentnetwork.biz, Lawrence R. White,
an individual, and Aeromedia Marketing,
Inc., a Michigan corporation,

        Defendants.

Case No. 2:09-cv-12269

Hon. Robert H. Cleland

---

Jaffe, Raitt, Heuer, and Weiss, P.C.
Attorneys for Plaintiff
Joan H. Lowenstein (P39422)
Michael S. Khoury (P34413)
201 S. Main Street, Suite 300
Ann Arbor, MI 48104
(734) 222-4776
jlowenstein@jaffelaw.com
mkhoury@jaffelaw.com

Clos, Russell & Wirth, P.C.
Attorneys for Defendants
Charles E. Clos (P43380)
William M. Clos (P65113)
35551 Ford Road, Suite 100
Westland, MI 48185
(734) 326-2101
cclos@lawyersmichigan.com
wclos@lawyersmichigan.com

---

## PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff, Career Agents Network responds to Defendants' Motion for Summary Judgment pursuant to Fed. R.Civ.P. 56 (c), and submits the accompanying brief to support its request that the motion be denied.

Respectfully submitted,

DATED: January 22, 2010

JAFFE, RAITT, HEUER, & WEISS, P.C.

By: /s/ Joan H. Lowenstein
    Joan H. Lowenstein (P39422)
    201 S. Main St., Suite 300
    Ann Arbor, MI 48104
    (734) 222-4776
    jlowenstein@jaffelaw.com

    Attorneys for Career Agents Network, Inc.

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF MICHIGAN

CAREER AGENTS NETWORK,
INC., a Michigan corporation,

     Plaintiff,

vs.

careeragentsnetwork.biz,
careeragentnetwork.biz, Lawrence R.
White, an individual, and Aeromedia
Marketing, Inc., a Michigan corporation,

    Defendants.

Case No. 2:09-cv-12269

Hon. Robert H. Cleland

| | |
|---|---|
| Jaffe, Raitt, Heuer, and Weiss, P.C. | Clos, Russell & Wirth, P.C. |
| Attorneys for Plaintiff | Attorneys for Defendants |
| Joan H. Lowenstein (P39422) | Charles E. Clos (P43380) |
| Michael S. Khoury (P34413) | William M. Clos (P65113) |
| 201 S. Main Street, Suite 300 | 35551 Ford Road, Suite 100 |
| Ann Arbor, MI 48104 | Westland, MI 48185 |
| (734) 222-4776 | (734) 326-2101 |
| jlowenstein@jaffelaw.com | cclos@lawyersmichigan.com |
| mkhoury@jaffelaw.com | wclos@lawyersmichigan.com |

## PLAINTIFF'S BRIEF IN RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT[1]

---

[1] Because the issues raised are the same, Plaintiff's response brief and its brief in support of Plaintiff's Cross-Motion for Summary Judgment are essentially identical but titled and filed separately to conform with ECF filing.

# Table of Contents

Page

Issues Presented . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Undisputed Facts . . . . . . . . . . . . . . . . . . . . . . . . 1

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4


I.   Defendants' Use of Plaintiff's Trademark Constitutes
     Cybersquatting . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

     A. Defendants' Bad Faith is Over the Top of
        What the ACPA Requires . . . . . . . . . . . . . . . . . . . . . . 7

     B. The Career Agents Network Trademark is Distinctive
        and Protectable . . . . . . . . . . . . . . . . . . . . . . . . . 9


II.  Plaintiff Seeks a Remedy Against Defendants' Unlawful Conduct,
     Not a Prior Restraint on Defendants' Speech . . . . . . . . . . . . . 10

     A. Defendants Violated the Lanham Trademark Act . . . . . . . . . 11

     B. Defendants' Actions are Likely to Cause Confusion Between
        The Defendant Domain Names and the CAN Trademark . . . 13

III. Plaintiff is Entitled to Injunctive Relief, Damages,
     and Attorney Fees . . . . . . . . . . . . . . . . . . . . . . . . . . 17

IV.  Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18


Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

## Issues Presented

1.      Should the Court deny Defendants' Motion for Summary Judgment because Defandants' have no First Amendment right to infringe Plaintiff's trademark?

     Plaintiff answers "Yes"

2.      Should the Court grant Plaintiff's Cross-motion for Summary Judgment because Plaintiff has shown that Defendants engaged in cybersquatting and infringed Plaintiff's trademark by registering domain names identical to Plaintiff's mark, all in bad faith?

     Plaintiff answers "Yes"

# Table of Controlling Authorities

**Cases**             **Page**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . .   5

*Balance Dynamics Corp. v. Schmitt Industries, Inc.*,
     204 F. 3d 683 (6th Cir. 2000)     . . . . . . . . . . . . . . . . . . . . . . . . . . .   18

*Banff, Ltd. v. Federated Dep't. Stores, Inc.*, 841 F.2d 486 (2d Cir. 1988) . . . . .   16

*Bosley Medical Institute, Inc. v. Kremer*,
     403 F.3d 672 (9th Cir. 2005)     . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

*Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n. of N.Y.*,
     447 U.S. 557 (1980)     . . . . . . . . . . . . . . . . . . . . . . . . . . .   11

*Daddy's Junky Music Stores, Inc. v.*
     *Big Daddy's Family Music Ctr.*, 109 F.3d 275(6th Cir. 1997) . . . . . . . .   14, 17

*DaimlerChrysler v. Net Inc.*, 388 F.3d 201 (6th Cir. 2004) . . . . . . . . . . . . . .   10

*Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007 (3d Cir. 2008) . . . . . . . . . . . . . .   11

*Ford Motor Company v. 2600 Enterprises*,
     177 F. Supp. 661 (E.D. Mich. 2001)     . . . . . . . . . . . . . . . . . . . . . . .   13

*Ford Motor Co. v. Catalanotte*, 342 F.3d 543 (6th Cir. 2003) . . . . . . . . . . . . .   6

*Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837 (E.D. Mich. 2006) . . . . . . . . . . .   17

*Ford Motor Co. v. Greatdomains.com, Inc.*,
     *177 F. Supp. 2d 635 (E.D. Mich. 2001)* . . . . . . . . . . . . . . . . . . . . . . . . .   7

*Frisch's Restaurant's, Inc. v. Elby's Big Boy of Steubenville, Inc.*,
     670 F. 2d 642, 648 (6th Cir. 1982)     . . . . . . . . . . . . . . . . . . . . . . . . . .   14

*Jews for Jesus v. Brodsky*, 993 F. Supp. 282 (D.N.J. 1998) . . . . . . . . . . . . . .   11

*Lucas Nursery and Landscaping, Inc. v. Grosse*,
     359 F.3d 806 (6th Cir. 2004)     . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

*OBH, Inc. v. Spotlight Magazine, Inc.*,
     86 F. Supp.2d 176 (W.D.N.Y. 2000)     . . . . . . . . . . . . . . . . . . . . . . . .   12

*Paccar Inc. v. TeleScan Technologies, LLC,*
    319 F. 3d 243 (6th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Sporty's Farm L.L.C. v. Sportsman's Market, Inc.,*
    202 F.3d 489 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . 7

*Taubman v. Webfeats,* 319 F.3d 770 (6th Cir. 2003) . . . . . . . . . . . . . . . . . . . . 8

*Wynn Oil Co. v. Thomas,* 839 F.2d 1183 (6th Cir. 1988) . . . . . . . . . . . . . . . 14, 17

**Statutes**

15 U.S.C. § 1117(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

15 U.S.C. § 1125(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 14

15 U.S.C. § 1125(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

**Rules**

Fed. R. Civ. P. 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

## Introduction

Defendant, Lawrence R. White (White) was caught red-handed attempting to damage Plaintiff's business and thereby divert clients and bolster his own competing business. Defendants created a bogus Career Agents Network website intended to intercept, through use of deceit and trickery, the audience sought by Plaintiff. Defendants' Internet sites use Plaintiff's name as their domain name addresses, conveying the impression to Internet users that Career Agents Network is the sponsor of Defendants' Internet site.

After going to considerable expense, Plaintiff, Career Agents Network (CAN) obtained a temporary restraining order from this Court and revealed that White was behind the pseudonymous registration of domain names using CAN's trademark. White used the domain names for one-page websites showing a cryptic "warning" and then hired an "optimizer" to deliberately pepper the Internet with signals that would lead potential CAN customers to White's illegitimate websites. Moving for summary judgment, White claims he merely set up "gripe sites" that are protected by the First Amendment. As described fully below, this defense is without merit and cannot protect White's digital arson attacks from the Federal remedies Plaintiff has pled.

## STATEMENT OF UNDISPUTED FACTS

In or around March 2009, employees of CAN discovered that Internet Google searches for "career agents network" led not only to the CAN website at www.careeragentsnetwork.com, but also to two websites using the domain names <careeragentsnetwork.biz> and <careeragentnetwork.biz> (Defendant Domain Names). *See* **Exhibit 1,** Declaration of Joshua Decker, ¶ 4. They discovered that the two Internet domain names had been registered by PrivacyProtect.org, a company located in The Netherlands. The registrar for the Defendant Domain Names was DirectI Internet Solutions Pvt. Ltd., d/b/a PublicDomainRegistry.Com, located in Mumbai, India. Decker declaration, ¶ 5. The <careeragentsnetwork.biz> and <careeragentnetwork.biz> domain

names were registered on January 21, 2009 and were not linked to an interactive website, however the <careeragentsnetwork.biz> domain name was linked to a one-page website that stated: "Warning  If you are considering investing in this 'opportunity,' be aware that it is highly improbable that you will earn enough to cover your investment.  If you proceed with this company you have been warned by those that know and have lost $20,000-$150,000 by trusting them and their 'plan'."  *See* Exhibit E to Defendants' Brief in Support of Summary Judgment.  The <careeragentnetwork.biz> domain name may or may not have been linked to a website.

In addition, these same Google searches led to more than a dozen web logs or "blogs" that were mostly nonsensical but used similar warning language and linked to the two Defendant Domain Names but had no other information.  The authors of these blogs used the pseudonyms Frank Dunts, Ric Strands, Career Agent 007, and others.  None of the blog entries contained contact information for these "authors."  Decker Declaration, ¶¶ 6, 7.

Neither the domain name registrar nor PrivacyProtect.org would reveal the actual person behind registration of the Defendant Domain Names.  Plaintiff instituted this action on June 12, 2009 as an *in rem* action against the Defendant Domain Names and this Court entered a temporary restraining order, ordering the registrar to reveal the true owner.  The true registrant is Larry White, with the "registrant organization" listed as AeroMedia Marketing, Inc.  Defendant White is listed as the administrative contact.  *See* Exhibit C to Defendants' Brief.  Plaintiff amended the Complaint to add these defendants (Docket # 11, July 16, 2009).

Defendant White is an employment recruiter who recruits and places employees, primarily in the healthcare industry.  *See* **Exhibit 2,** Deposition of Lawrence R. White, p. 3.  He is an officer of Health Care Agents, Ltd. and AeroMedia Marketing, Inc.  *Id.* at p.

2. AeroMedia Marketing, Inc. is listed as the registrant organization for the Defendant Domain Names. According to Defendant White, AeroMedia is a company that does marketing for clients in a variety of industries. *Id.*, pp. 2,3.

Career Agents Network is a Michigan corporation with its principal place of business in Wixom, Michigan. CAN is an international consortium of independently owned recruiting companies from an assortment of high-growth industries. CAN provides support for recruiting entrepreneurs. The Member recruiting companies collaborate with one another to place candidates in the right positions. *See* **Exhibit 3,** Deposition of Charlotte Byndas, pp. 1 – 16. CAN agents share recruitment fees when they collaborate to place a client. Byndas Dep., p. 40.

After CAN was formed in late 2008, it purchased the assets of a Missouri placement service called Health Career Agents, Inc. (HCA). Byndas dep., pp. 22 – 24. HCA is also a consortium of agents and agents who were already under contract with HCA were given the option of contracting with CAN. Byndas dep., p. 25. Defendant White, through his company, Healthcare Agents, Ltd., is under contract with HCA. Defendants' Brief, p. 2. When asked at his deposition whether he had any connection to CAN, White stated, "None that I'm aware of." White Dep., p. 4. This is not true. If White makes an employee placement with the aid of HCA, he must split the placement fee with HCA, whose assets are now owned by CAN. Byndas Dep., pp. 40, 143. In fact, the relationship between Defendant White and CAN was such that White's business partner, Lorie Brady, emailed an apology to CAN after CAN became aware of White's infringement and cyberpiracy. Byndas Dep., pp. 146 – 7.

Though CAN is a relatively new company, it has spent hundreds of thousands of dollars marketing and advertising of the CAN Mark, and announced the asset purchase agreement with HCA publicly. Decker Declaration, ¶ 3; Byndas Dep., p. 37. Both the CAN Mark and its association with HCA have been marketed through multiple channels of trade so that the public has come to recognize and associate the name "CAREER AGENTS NETWORK" as a symbol that identifies and distinguishes the professional recruiting and employment services provided exclusively by CAN. Byndas dep., pp. 29 – 40.

## ARGUMENT

The First Amended Complaint pleads two counts: Cybersquatting under the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d) (ACPA) and trademark infringement under the Lanham Trademark Act, 15 U.S.C. § 1125(a). Defendants' brief first posits a First Amendment defense to trademark infringement. The brief next discusses trademark dilution, which Plaintiff has not alleged and therefore will not address. Lastly, Defendants argue they are entitled to summary judgment on the cybersquatting claim. Plaintiff will first address the cybersquatting argument and then trademark infringement.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A grant of summary judgment does not automatically fail in the presence of any factual dispute whatsoever. As the Supreme Court has held, "*some* alleged factual dispute between the parties will not defeat an

otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). Furthermore, "at the summary judgment stage the judge's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. . . . [T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. If the contradictory facts presented by the nonmoving party, even if true, would not affect the outcome of the case, a trial is unnecessary and summary judgment should properly be granted. *Anderson*, 477 U.S. at 248-49.

It is Plaintiff's argument that the facts are not in dispute and that this case can be decided as a matter of law. The Court should deny Defendants' motion for summary judgment and grant Plaintiff's cross-motion for summary judgment on both counts of the First Amended Complaint.

## I.     Defendants' Use of Plaintiff's Trademark Constitutes Cybersquatting

The Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d) applies to the registration of domain names that are identical to distinctive or famous marks. The ACPA provides, in pertinent part, that:

> [A] person shall be liable in a civil action by the registrant of a mark . . . if, without regard to the goods or services of the parties, that person –
>
> > (i)     has a bad faith intent to profit from that mark . . .; and
> >
> > (ii)     registers, traffics in, or uses a domain name that
> >
> > > (I)     in the case of a mark that is distinctive at the time of registration of the domain name is identical or confusingly similar to that mark; [or]

> (II) in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark . . . .

15 U.S.C. § 1125(d)(1)(A). A trademark owner asserting a claim under the ACPA must establish the following: (1) it has a valid trademark entitled to protection; (2) its mark is distinctive or famous; (3) the defendant's domain name is identical or confusingly similar to, or in the case of famous marks, dilutive of, the owner's mark; and (4) the defendant used, registered, or trafficked in the domain name (5) with a bad faith intent to profit. *Ford Motor Co. v. Catalanotte*, 342 F.3d 543, 546 (6th Cir. 2003). Plaintiff is entitled to Summary Judgment on its ACPA claim because each of the foregoing elements is satisfied.

First, Defendant White registered the Defendant Domain Names with a bad faith intent to profit from the CAN Mark. In assessing whether a person has a "bad faith intent," the ACPA lists a number of factors a court may consider:

(I) the trademark or other intellectual property rights of the person, if any, in the domain name;

(II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;

(III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;

(IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;

(V) the person's intent to divert consumers from the mark registrant's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation or endorsement of the site;

(VI) the person's offer to transfer sell or otherwise assign the domain name to the mark registrant or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;

(VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the

person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;

(VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, without regard to the goods or services of the parties; and

(IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous . . . .

15 U.S.C. § 1125(d)(1)(B). "[A court is] not limited to considering just the listed factors when making [its] determination of whether the statutory criterion has been met. The factors are, instead, expressly described as indicia that 'may' be considered along with other facts." *Sporty's Farm L.L.C. v. Sportsman's Market, Inc.*, 202 F.3d 489, 498 (2d Cir. 2000).

### A.     Defendants' Bad Faith is Over the Top of What the ACPA Requires

As this Court noted in *Ford Motor Company v. Greatdomains.com, Inc.*, 177 F. Supp.2d 635 (E.D. Mich. 2001), the "bad faith" factors listed in the ACPA , " . . . as a whole, focus on whether the defendant's use of the disputed domain name is legitimate – i.e., for some purpose other than simply to profit from the value of the trademark." *Id.* at 642.  In this case, Plaintiff has demonstrated the Defendants' bad faith because:  (1) the Defendants have no trademark rights in the respective domain name; (2) the Defendant Domain Names do not contain any of the Defendants' legal names; (3) the Defendants have made no use of the marks contained in the Defendant Domain Names prior to registering the domain names; (4) the Defendants have not made any bona fide non-commercial or fair use of the domain names; (5) the Defendants registered two domain names that contain Plaintiff's identical or nearly-identical trademark; and (6) the CAN Mark was distinctive at the time the Defendant Domain Names were registered.

The actions of Defendants White and AeroMedia went beyond the statutory threshold for bad faith and can be distinguished from all the cases Defendants have cited in their favor. Defendant White, who is in competition with CAN and CAN agents as an employment recruiter, registered the Defendant Domain Names with an off-shore server, using a "privacy" agent so that the registrant could not be identified. Defendants' contention at page 19 of their brief and in Defendant White's declaration that he "properly" registered the domain names is patently false. Plaintiff had to appeal to this Court for an injunction because neither the privacy agent nor the off-shore registrar could be served. Adding insult to injury, Defendant White deliberately manipulated Internet search mechanisms by hiring a search engine optimizer who opened more than a dozen sham blogs that linked to the Defendant Domain Names. This subterfuge on the part of Defendants is unlike the stated facts in *any* of the ACPA cases cited by Defendants.

To the contrary, in cases Defendants cite, courts observed factors pointing to *good faith,* such as disclaimers. For example, in *Taubman v. Webfeats*, 319 F.3d 770 (6th Cir. 2003), which at page 8 of their brief Defendants call "strikingly similar" to this case, the court noted, "Mishkoff has placed a conspicuous disclaimer informing customers that they had not reached Taubman's official mall site." *Id.* at 777. In *Lucas Nursery and Landscaping, Inc. v. Grosse*, 359 F.3d 806 (6th Cir. 2004), the same court said, "Nor is there any evidence that Grosse ever sought to mislead consumers with regard to the site's sponsorship . . . She also did not provide misleading contact information when she registered the domain name. Finally, she has not acquired any additional domain names, which would be indicative of either an intent to sell such names to those entities whose trademarks were identical or similar, or exploit them for other uses." *Id.* at 810.

Defendants go to great length to explain that registration and use of the Defendant Domain Names is non-commercial and they assert that this removes them from coverage of the Lanham Act. *See* pp. 7 – 10 of Defendants' brief. This will be discussed more fully below, but with regard to the ACPA, it is important to point out that Defendants' argument is a smokescreen. First, it isn't true. Defendant White admits that he is a recruiter in the same business as is CAN. His commercial interest in diverting potential customers from CAN is that he makes more money if CAN agents are not involved in his employee placements. This was not the situation in *Bosley Medical Institute, Inc. v. Kremer*, 403 F.3d 672 (9th Cir. 2005), a case cited by Defendants at page 8 of their brief. In that case, the court pointed out, "Thus, the appropriate inquiry is whether Kremer offers *competing* services to the public. Kremer is not Bosley's competitor; he is their critic." *Id.* at 679 (emphasis in the original).

More importantly, the *Bosley* court specifically states that whether the trademark use by the infringer is commercial or noncommercial is irrelevant. "Allowing a cybersquatter to register the domain name with a bad faith intent to profit but get around the law by making noncommercial use of the mark would run counter to the purpose of the Act." *Id.* at 681. That court *reversed* the lower court's grant of summary judgment for the defendant on the ACPA claim.

Accordingly, several of the factors weigh heavily in favor of a finding that Defendants had a bad faith intent to profit from registration of domain names identical to Plaintiff's trademark. Thus, the first element is satisfied.

**B.    The Career Agents Network Trademark is Distinctive and Protectable**

A trademark need not be registered to be entitled to protection under the ACPA.

*See DaimlerChrysler v. Net Inc.*, 388 F.3d 201, 205 (6th Cir. 2004). Plaintiff has established goodwill associated with its trademark and is using the trademark in commerce in its successful recruiting business. As Plaintiff's COO testified, CAN is a well-established business that had recently changed its name and acquired the assets of another company. Because of these changes, CAN has spent hundreds of thousands of dollars to market and advertise its services under the CAN trademark. CAN has applied for trademark registration on the principal register and its application is proceeding through the U.S. Patent and Trademark Office. The first and second elements of Plaintiff's ACPA claim are clear.

Plaintiff can easily satisfy the third element of its claim under the ACPA because the Defendant Domain Names are identical to the CAN Mark. Courts generally have held that a domain name that incorporates a trademark is confusingly similar to that mark if "consumers might think that [the domain name] is used, approved, or permitted" by the mark holder. *See Ford v. Greatdomains.com, supra,* at 641. Moreover, Defendant Domain Names are "confusingly similar" because a reasonable Internet user seeking the "Career Agents Network" website would likely assume that Defendant Domain Names are somehow associated with Plaintiff and/or would actually direct the web user to Plaintiff's website. Defendants' use of the CAN Mark surely satisfies the "confusingly similar" test of the ACPA.

The Court should deny summary judgment to Defendants and grant summary judgment to Plaintiff on Count I of the First Amended Complaint, the ACPA claim.

## II.     Plaintiff Seeks a Remedy Against Defendants' Unlawful Conduct, Not a Prior Restraint on Defendants' Speech

Plaintiff seeks relief under the Lanham Trademark Act directed at Defendants' unlawful use of the Defendant Domain Names. Such a remedy does not implicate the

First Amendment, as it is directed at Defendants' conduct, not Defendants' right to free speech.

The Lanham Act "customarily avoids violating the First Amendment, in part by enforcing a trademark only when consumers are likely to be misled or confused by the alleged infringer's use." *Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1018 (3d Cir. 2008). *See Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 563 (1980) ("[T]here can be no constitutional objection to the suppression of commercial messages that do not accurately inform the public about lawful activity."); *see also* 6 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 31:142, at 31-229 (4th ed. 1996 & Supp.2008) (describing the low level of First Amendment protection for misleading speech). Plaintiff seeks a permanent injunction against Defendants' use of the Defendant Domain Names, which are identical or nearly identical to the CAN trademark, because of the likelihood of confusion in the marketplace. Defendants' use of those domain names is part of a deliberate attempt to divert Internet viewers to a bogus website by misleading them into the belief that "careeragentsnetwork.biz" will provide them with information about CAN.

A.     **Defendants Violated the Lanham Trademark Act**

Defendants claim, at p. 7 of their brief, that their registration and use of Plaintiff's trademark in the Defendant Domain Names is purely noncommercial. This argument is specious given Defendant White's status as an employment recruiter in competition with Plaintiff. Moreover, in similar situations, courts have found trademark infringements even where the defendant in fact had only a political purpose for establishing a bogus website. In *Jews for Jesus v. Brodsky*, 993 F. Supp. 282 (D.N.J. 1998), the defendant

registered a domain name using the plaintiff's service mark, posted a one-page website there, and claimed he had critical things to say about the plaintiff. *See id.* at 290. The court did not accept the defendant's First Amendment defense:

> In this case, the Defendant has done more than merely register a domain name. He has created, in his words, a "bogus 'Jews for Jesus'" site intended to intercept, through the use of deceit and trickery, the audience sought by the Plaintiff Organization. Moreover, the Defendant Internet site uses the Mark and the Name of the Plaintiff Organization as its address, conveying the impression to Internet users that the Plaintiff Organization is the sponsor of the Defendant Internet site.
>
> \*\*\*
>
> The conduct of the Defendant also constitutes a commercial use of the Mark and the Name of the Plaintiff Organization because it is designed to harm the Plaintiff Organization commercially by disparaging it and preventing the Plaintiff Organization from exploiting the Mark and the Name of the Plaintiff Organization.
>
> \*\*\*
>
> The requirement that the activities of an infringer be done "in connection with any goods or services," does not require the infringer to actually cause goods or services to be placed into the stream of commerce. (citation omitted) Rather, all that is needed is that the trademark violation be "in connection" with any goods or services.

*Id.* at 308-9.

Defendants' actions here are much like those described in *OBH, Inc. v. Spotlight Magazine, Inc.,* 86 F. Supp.2d 176 (W.D.N.Y. 2000), where the court said:

> The Court infers, based on facts and circumstances present here, along with basic common sense, that Tortora intentionally copied and used "The Buffalo News" trademark as his domain name in the expectation that Internet users looking for The Buffalo News' web site would mistakenly come to his web site where they would encounter negative and disparaging comments about The Buffalo News. In other words, Tortora hoped to trick users into coming to his web site and receiving his message.

*Id.* at 184. The *OBH* court agreed with courts in other cases that, "the national, and even international, nature of the Internet itself makes defendants' use of plaintiffs' trademark as a domain name a 'use in commerce' for purposes of the Lanham Act." *Id.* at 196,

*accord Planned Parenthood Fed'n of Am., Inc. v. Bucci,* 1997 WL 133313, at *3

(S.D.N.Y. Mar. 24, 1997), *aff'd,* 152 F.3d 920 (2d Cir. 1998).

Defendants' discussion of initial interest confusion is disingenuous. Defendant White admits that he not only registered domain names using CAN's mark, he also hired a search engine optimizer whose job was essentially to leave bread crumb trails throughout the Internet leading to White's bogus site. So, after deliberately creating initial interest confusion, Defendants now argue that initial interest confusion is not a Lanham Act violation and cite this Court's decision in *Ford Motor Company v. 2600 Enterprises,* 177 F. Supp. 661 (E.D. Mich. 2001). However, in the *2600* case, this Court specifically noted that, "Defendants' use of the FORD mark in their programming code, **unlike the unauthorized use of a trademark as a domain name,** does not inhibit Internet users from reaching the websites that are most likely to be associated with the mark holder." *Id.* at 665 (emphasis added). In contrast to that case, here the Defendants used CAN's mark in the unlawful Defendant Domain Names.

Defendants would have this Court believe that they (in particular, Defendant White) were engaged in protected consumer commentary (*see* p. 10 of Defendants' brief). But Defendant White's modus operandi is slash and burn, not consumer information. In fact, one of his other alleged "gripe sites" is called "slashburnpoison.com." White set up that site, purportedly as a foil to the American Cancer Society, but has not made any comments or additions to it in years. White is more akin to an Internet arsonist than a consumer advocate. At the one-page website he set up using the Defendant Domain Names, there was no cogent consumer information, just a cryptic "warning." The blogs that Defendants' search engine optimizer sprinkled throughout the Internet similarly

contain no information or contact addresses. Defendants' First Amendment claim is as fake as the domain names they unlawfully registered.

### B. Defendants' Actions are Likely to Cause Confusion Between The Defendant Domain Names and the CAN Trademark

"The touchstone of liability under § 1114 [or § 1125(a)] is whether the defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties." *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 280 (6th Cir. 1997).

This is determined by a consideration of several factors: (1) strength of the plaintiff's mark; (2) relatedness of the goods or services; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) likely degree of purchaser care; (7) defendant's intent in selecting its mark; and (8) likelihood of expansion of the product lines. *Frisch's Restaurant's, Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F. 2d 642, 648 (6th Cir. 1982).

However, "a plaintiff need not show that all, or even most of the factors listed are present in any particular case to be significant." *Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 1186 (6th Cir. 1988). The ultimate question is merely "whether relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way." *Daddy's Junky Music*, 109 F.3d at 280. Here, a majority of the factors, including key indicators, all clearly demonstrate a likelihood of confusion.

1.     **Strength of Plaintiff's Mark.** Although the CAN name is relatively recent, the companies it now represents are well-established. The CAN name has been extensively advertised through print media, the Internet, and professional conferences. CAN's annual marketing budget is more than $100,000. CAN has applied for trademark

registration on the principal register and its application is proceeding through the U.S. Patent and Trademark Office. This factor weighs in favor of Plaintiff. *See, e.g., Jews for Jesus, supra* at 303.

2. **Similarity of the Marks.** It has been said that "few would be stupid enough to make exact copies of another's mark or symbol.... [T]he most successful form of copying is to employ enough points of similarity to confuse the public with enough points of difference to confuse the courts." *Baker v. Master Printers Union*, 34 F. Supp. 808, 811 (D.N.J. 1940). But in this case, Defendants did make exact copies of the Career Agents Network mark. Defendants used an identical version of Plaintiff's trademark – Career Agents Network – as one domain name and a nearly-identical version for the other. Where an infringer uses the exact mark of the holder of a mark, a great likelihood of confusion exists. *See Greatdomains.com, supra* at 641. Thus, on its face, this factor strongly favors Plaintiff.

3. **Relatedness of Services**

> If the goods or services of the parties are "competitive," injury results from a direct diversion of sales from the senior user to the infringer, caused by the confusion of buyers. Where the goods or services are directly competitive, the degree of similarity of marks needed to cause likely confusion is less than in the case of dissimilar goods or services.

4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 24:22 (4th ed. 2001). Here, Defendant White is a direct competitor of Plaintiff, in the business of employment recruiting. He has used Plaintiff's trademark as a domain name for a website that is intended to reach Plaintiff's potential customers. The audience for both Defendants' "warning" website and Plaintiff's legitimate website is the same. Based on the fact that Plaintiff's services are directly competitive with Defendants', this factor

weighs indisputably in Plaintiff's favor.

4. **Marketing Channels Used.** Here, both Plaintiff and Defendant "market their goods and services through the Internet, which increases the likelihood of confusion between the two marks." *Paccar Inc. v. TeleScan Technologies, LLC*, 319 F. 3d 243, 253 (6th Cir. 2003). Because of the ease in which the Internet allows users to surf for information, "Defendant's domain name and home page address are external labels that, on their face, cause confusion among Internet users and may cause Internet users who seek plaintiff's web site to expend time and energy accessing defendant's web site." *Id.* (citations omitted). Defendants have actually attempted to "optimize" the Internet marketing channel, making consumer confusion almost inevitable. Thus, this factor also weighs very strongly in Plaintiff's favor.

5. **Defendant's Intent.** Defendant's bad faith and deliberate intent to harm Plaintiff's business, as described above, tilts this factor strongly in CAN's favor.

6. **Purchaser Care.** As the *Paccar* court stated, "Initial interest confusion 'afflicts sophisticated Internet users no less than it does unsophisticated users.'" *Id.* at 254, citing *OBH, Inc. v. Spotlight Magazine, Inc., supra* at 190. Even if purchasers are sophisticated, when the marks are nearly identical and the products or services are the same, the likelihood of confusion is high. *Banff, Ltd. v. Federated Dep't. Stores, Inc.*, 841 F.2d 486, 492 (2d Cir. 1988). Like anyone else, a sophisticated customer is likely to be confused and misled when a domain name is identical to the trademark of the company he or she is looking for on the Internet. This factor also favors CAN.

7. **Other factors.** As to the remaining confusion factors, first, because Plaintiff's and Defendants' services occupy the identical market niche, there is no reason

to analyze the likelihood of Plaintiff expanding its services to come into competition with Defendants' services. The relevant services are already in competition, so this factor becomes insignificant.

Finally, "the test of infringement is the *likelihood* of confusion, not the proof of *actual* confusion." 3 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 23:12 (4th ed. 2001). "Due to the difficulty of securing evidence of actual confusion, a lack of such evidence is rarely significant . . . ." *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 284 (6th Cir. 1997). Because CAN moved promptly to protect its mark, this factor is irrelevant.

Plaintiff need not prevail on all or even a majority of the factors. *Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 1186 (6th Cir. 1988). CAN has provided overwhelming evidence as to the key factors of strength of mark, similarity of marks, relatedness of services, marketing channels used, purchaser care, and Defendants' intent, while none of the factors weigh against Plaintiff. The Court should deny summary judgment to Defendants and grant summary judgment to Plaintiff on Count II of the First Amended Complaint, the trademark infringement claim.

### III.    Plaintiff is Entitled to Injunctive Relief, Damages, and Attorney Fees

The facts and law detailed above overwhelmingly support granting summary judgment in Plaintiff's favor. The Lanham Act, including the ACPA, allows Plaintiff to claim injunctive relief, actual or statutory damages, and attorney fees. *See, e.g.,* this Court's decision in *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837 (E.D. Mich. 2006). In that case, the Court awarded almost $130,000 in statutory damages, costs and fees after a default judgment and findings by the Magistrate Judge. Should the Court grant summary

judgment to Plaintiff in this case, Plaintiff requests an award of statutory damages, costs, and attorney fees as well as injunctive relief. Specifically, Plaintiff seeks an award of $100,000 per infringing domain name, plus its costs, including "damage control," and attorney fees expended in defending its trademark and goodwill by pursuing this litigation. *See Balance Dynamics Corp. v. Schmitt Industries, Inc.*, 204 F. 3d 683, 692 (6th Cir. 2000) ("damage control expenses should be recoverable upon a showing of the likelihood of actual confusion, rather than upon a showing of actual confusion itself. This rule recognizes that it is unreasonable to expect a businessperson faced with a Lanham Act violation to sit idly by until a customer manifests actual confusion."). The Lanham Act authorizes an award of "reasonable attorney fees to the prevailing party" in exceptional cases. 15 U.S.C. § 1117(a). Such an award is available in trademark infringement cases where the acts of infringement can be characterized as malicious, fraudulent, deliberate or willful, as was the case in *Cross, supra* at 854.

## IV. CONCLUSION

Based on the foregoing, Plaintiff requests that the Court deny Defendants' Motion for Summary Judgment and grant Plaintiff's Cross-Motion for Summary Judgment, and award Plaintiff injunctive relief, damages, costs, and attorney fees.

Respectfully submitted,

DATED: January 22, 2010

JAFFE, RAITT, HEUER, & WEISS, P.C.

By: /s/ Joan H. Lowenstein
    Joan H. Lowenstein (P39422)
    201 S. Main St., Suite 300

Ann Arbor, MI 48104
(734) 222-4776
jlowenstein@jaffelaw.com

Attorneys for
CAREER AGENTS NETWORK, INC.

**Certificate of Service**

I certify that on January 22, 2010, I filed the foregoing BRIEF IN RESPONSE

TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT with the Clerk of the

court via the ECF system, providing notice to all counsel of record.

/s/ Joan H. Lowenstein
Joan H. Lowenstein (P39422)