UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

CAREER AGENTS NETWORK,
INC., a Michigan corporation,                          Case No. 2:09-cv-12269

            Plaintiff,                                 Hon. Robert H. Cleland

vs.

careeragentsnetwork.biz,
careeragentnetwork.biz, Lawrence R.
White, an individual, and AeroMedia
Marketing, Inc., a Michigan corporation,

            Defendants.

_____/

| | |
|---|---|
| Jaffe, Raitt, Heuer, and Weiss, P.C. | Clos, Russell & Wirth, P.C. |
| Attorneys for Plaintiff | Attorneys for Defendants |
| Joan H. Lowenstein (P39422) | Charles E. Clos (P43380) |
| Michael S. Khoury (P34413) | Shannon L. Wirth (P58822) |
| 201 S. Main Street, Suite 300 | 35551 Ford Road, Suite 100 |
| Ann Arbor, MI 48104 | Westland, MI 48185 |
| (734) 222-4776 | (734) 326-2101 |
| jlowenstein@jaffelaw.com | cclos@lawyersmichigan.com |
| mkhoury@jaffelaw.com | swirth@lawyersmichigan.com |

_____/

## DEFENDANTS' BRIEF IN REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY DISPOSITION

# TABLE OF AUTHORITIES

## Cases

*Bigtime Worldwide Concert v. Marriott Int'l, Inc.*, 236 F Supp 2d 791, 805 (ED Mich 2003) . . 5

*Bosley Medical Institute, Inc. v Kremer*, 403 F.3d 672 (9th Circ 2005) . . . . . . . . . . . . . . . . . . . . . 4

*Ford Motor Co. v. 2600 Enters.*, 177 F.Supp. 2d 661 (E.D. Mich 2001) . . . . . . . . . . . . . . . . . . 3

*Homeowners Group, Inc. v Home Marketing Specialists, Inc.*, 931 F2d 1100, 1105 (6th Cir 1991)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Jews for Jesus*, 993 F. Supp. 282 (D.N.J. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Parker v Google, Inc.*, 422 F.Supp. 2d 492 (E.D. Pa. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Planned Parenthood*, 1997 U.S. Dist. LEXIS 3338; 42 U.S.P.Q.2D (BNA) 1430 . . . . . . . . . . . . 5

*Strick Corp. v Strickland*, 162 F Supp 372 (ED Pa 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Therma-scan Inc. v Thermoscan, Inc.*, 295 F3d 623, 638 (6th Cir 2002) . . . . . . . . . . . . . . . . . . 4

# I. Plaintiffs Have Failed Produce Any Evidence of Bad Faith *Intent to Profit*.

## A. There Is No Competition Between the Parties

Plaintiff offers a "business-in-a-box" to individuals who wish to own and operate their own recruiting business. Defendant AeroMedia, Inc., the registrant of the Domain Names is engaged in the business of advertising, marketing and public relations and is not engaged in the healthcare recruiting business. Neither Defendant AeroMedia nor White offers any business in a box type product to any consumers. Neither Defendant offers to sell "independently owned recruiting companies" to anyone.[1] Defendant White has a fifty percent interest in Heatlhcare Agents, Ltd., an entity which recruits candidates for placement with particular employers, and contract with employers to provide employment candidates. It does not offer to sell any businesses to third parties.[2]

Charlotte Byndas, the Chief Operating Officer of Plaintiff testified Plaintiff has no competitors in the marketplace.[3] Ms. Byndas stated: "The closest thing to a competitor is a franchise organization to who we are. I'm not aware of anyone else that offers what we offer the way we offer it."[4]

In an attempt to create "competition" between the parties where none exists, Ms. Byndas testified that Defendant White has diverted potential "entrepreneurs" from Plaintiff, by virtue of a "WARNING" that was linked to the Defendant Domain Names. Ms. Byndas "thinks" that people looking into Plaintiffs' business opportunity stumbled onto the one page warning website and then, inexplicably, ended up somehow contacting Healthcare Agents, Ltd. and being hired as a recruiter (not the owner of a recruiting company).[5] Plaintiffs' theory ignores several pertinent and undisputed

---

[1]Defendants incorporate by reference herein Exhibits A through F of its Motion and Brief previously filed as Document No. 43. In addition, see Affidavit of Lawrence White attached hereto as Exhibit G.

[2]Id.

[3]See Deposition of Charlotte Byndas attached hereto as Exhibit H, p. 44.

[4]See Exhibit H at page 45.

[5]See Exhibit H at pp. 45-46, 65.

facts: 1) No products or services were offered on the Website; 2) No links to other websites that offered products or services were provided; 3) The identity of the author did not appear on the Website; and 4) There was no means of contacting any Defendant, nor any non-party on the Website. As such, it is impossible that the existence of the two domain names resulted in anyone being diverted to Defendants, or to any entity in which any Defendant has an interest.

**B. Plaintiff Has Not Come Forth with any Evidence that Defendant Registered the Domain Names to Divert Customers from Plaintiffs' Online Location**

When asked at her deposition what evidence Plaintiff has that the Domain Names were diverting customers from Plaintiff, Ms. Byndas offered only the fact that non-party Healthcare Agents, Ltd. has been successful in hiring recruiters.[6] Plaintiff has offered no other evidence.

Ms. Byndas testified that Defendants are competing with Plaintiff by virtue of the non-party, Healthcare Agents, Ltd., having a "Join Our Team" link on the healthcareagents.com Website.[7] That is not the domain name or website at issue in this litigation. There are no links to the healthcareagents.com website from the website at issue. As such, Plaintiff cannot establish that Defendant AeroMedia, the registrant of the website, nor Defendant White, has diverted, attempted to divert, or intended to divert customers from Plaintiff by registering the Domain Names.

Finally, Ms. Byndas testified that the "WARNING" website had a negative effect on members of Health Career Agents, Inc. and Career Agents Network. She stated that "the statements that were false statements about being able to derive revenue in the recruiting field hindered other members' ability to recruit people to their teams to be doing business."[8] If the warning had a negative effect on members, that would necessarily include Defendant White. This flies in the face of Plaintiff's

---

[6]See Exhibit H at pp. 64-65.

[7]This domain name is owned by Healthcare Agents, Ltd. and Plaintiff claims zero interest in that domain name.

[8]See Exhibit H, p. 82.

2

argument that Defendants profited or intended to profit from the registration of the Domain Names.

## C. Plaintiff Has Failed to Come Forward With Evidence That Its Mark is Distinctive or Famous.

Plaintiff has offered no evidence, other than its own self-serving statements, that "Career Agents Network" is famous or distinctive. At her deposition, the Chief Operating Officer of Plaintiff testified that she did not know whether people in the street, or within a health care facility would know who or what Career Agents Network is.[9] She further testified that the "general public" that Plaintiff purports recognizes and distinguishes the Career Agents Network Mark refers only to the "online public."[10]

## II. Plaintiff Cannot Refute That Defendants' Use of the Mark Is Not a Commercial Use

Plaintiff's reliance on *Jews for Jesus*[11] for the proposition that use of a mark in a domain name on the internet makes the use "in commerce" is misplaced. The court in *Ford Motor Co. v. 2600 Enters.*, 177 F.Supp. 2d 661 (2001) specifically rejected this proposition and specifically rejected the argument that the "commercial use" requirement is satisfied any time the unauthorized use of a mark inhibits the mark holder's ability to establish a presence on the Internet or otherwise disparages the mark owner.

## III. There Is No Likelihood of Confusion

The likelihood of confusion factors favor Defendants.

*a. Strength of Plaintiff's Mark.* Plaintiff did not even exist until December 9, 2008. The domain names at issue was registered a mere 6 weeks later. Further, Plaintiff's mark consists of common words which are used extensively in the marketplace in various forms[12]. The USPTO

---

[9] See Exhibit H at page 80.
[10] See Exhibit H at page 79.
[11] 993 F. Supp. 282 (1998).
[12] See *Homeowners Group, Inc. v Home Marketing Specialists, Inc.*, 931 F2d 1100, 1105 (6th Cir 1991).

3

recently required Plaintiff to disclaim the descriptive wording "agents network." As such, plaintiff's

mark was extremely weak when the domain names were registered. This factor favors Defendants.

    ***b. Relatedness of the Goods or Services.*** There are no products or services offered by

Defendants on the website. The only thing offered is an opinion about the services offered by

Plaintiff. This factor favors Defendants.

    ***c. Similarity of the Marks.*** Admittedly, the name of Plaintiff's business appears in the

domain name registered by Defendant to denote the subject matter of the website. However, that fact

is not determinative.[13]

    ***d. Actual Confusion.*** Reviewing the fifty word website, any reasonable consumer would

immediately realize that Defendants' website is not the home page of Plaintiff, or even sponsored

by Plaintiff. There is no possibility that the website could "mislead consumers into buying a

competing service" as no commercial service or product is offered. "[t]he dangers that the Lanham

Act was designed to address are simply not at issue in this case." *Bosley,* 403 F.3d at 679-80; *see*

*also Parker v Google, Inc.,* 422 F.Supp. 2d 492 (E.D. Pa. 2006). This factor favors Defendants.

    ***e. Marketing Channels Used.*** The existence of the website is strictly on the Internet. At the

time the Domain Names were registered, Plaintiff had no online presence under its current name[14].

This factor favors Defendants.

    ***f. Likely Degree of Purchaser Care.*** In determining whether an ordinary buyer would

differentiate between similar trademarks, the standard is "ordinary caution."[15] "A higher degree of

---

    [13]*Strick Corp. v Strickland,* 162 F Supp 372 (ED Pa 2001) (finding no likelihood of confusion because, once an Internet user reached the defendant's website, it would be crystal clear that the Strick company was not the sponsor of the strick.com website.)

    [14]Their websites were blank pages with the words "Career Agents Network" in small courier type font against a white background.

    [15]*Therma-scan Inc. v Thermoscan, Inc.,* 295 F3d 623, 638 (6th Cir 2002).

care, in contrast, is appropriate where the buyer in question has a particular expertise or sophistication, or is making an expensive or unusual purchase."[16] The expectation of greater care by a consumer with "particular expertise or sophistication" reduces the likelihood of confusion[17]. Defendant White spent $49,000.00 to purchase the opportunity offered by Plaintiff. The professionals Plaintiff is seeking to attract are likely more sophisticated and would take greater care thereby reducing the likelihood that they would confuse Defendants' critical site with that of Plaintiff. As such, this factor favors Defendants.

*g. Defendants' Intent In Selecting the Mark.* Defendants' intent in registering the Domain Names can be readily gleaned from a review of the website's content. Defendant intended to express his opinion about the services offered by Plaintiff. Defendant White testified that the website was posted to express an opinion and to warn people who may be investigating the business opportunity offered by Plaintiff[18]. There is no evidence of any intent to cause confusion, as distinguished from the defendants in *Jews for Jesus* and *Planned Parenthood*.[19]

*h. Expansion of Product Lines.* As the website does not offer any products or services, this factor does not weigh in favor of either party.

Based on the above, Plaintiff cannot demonstrate that Defendants' use of Plaintiff's mark is likely to cause confusion. As such, Plaintiff's claim for Trademark Infringement must be dismissed.

/s/ Charles E. Clos
Clos, Russell & Wirth, P.C. (P43380)
35551 Ford Road, Suite 100
Westland, MI 48185
(734) 326-2101
cclos@lawyersmichigan.com

---

[16]Id.

[17]*Therma-scan, supra* at 638. See also, *Bigtime Worldwide Concert v. Marriott Int'l, Inc.*, 236 F Supp 2d 791, 805 (ED Mich 2003).

[18]See **Exhibit D**, pages 25-26, 41-42 to Defendants' Motion & Brief previously filed at Document No. 43.

[19]1997 U.S. Dist. LEXIS 3338; 42 U.S.P.Q.2D (BNA) 1430.

## Certificate of Service

I hereby certify that on February 5, 2010, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

jlowenstein@jaffelaw.com; and
mkhoury@jaffelaw.com

/s/ Charles E. Clos
Clos, Russell & Wirth, P.C.
35551 Ford Road, Suite 100
Westland, MI 48185
(734) 326-2101
cclos@lawyersmichigan.com
P43380