UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

CAREER AGENTS NETWORK,
INC., a Michigan corporation,

        Plaintiff,

vs.

careeragentsnetwork.biz,
careeragentnetwork.biz, Lawrence R.
White, an individual, and AeroMedia
Marketing, Inc., a Michigan corporation,

        Defendants.

Case No. 2:09-cv-12269

Hon. Robert H. Cleland

_____/

| Jaffe, Raitt, Heuer, and Weiss, P.C. | Clos, Russell & Wirth, P.C. |
|---|---|
| Attorneys for Plaintiff | Attorneys for Defendants |
| Joan H. Lowenstein (P39422) | Charles E. Clos (P43380) |
| Michael S. Khoury (P34413) | Shannon L. Wirth (P58822) |
| 201 S. Main Street, Suite 300 | 35551 Ford Road, Suite 100 |
| Ann Arbor, MI 48104 | Westland, MI 48185 |
| (734) 222-4776 | (734) 326-2101 |
| jlowenstein@jaffelaw.com | cclos@lawyersmichigan.com |
| mkhoury@jaffelaw.com | swirth@lawyersmichigan.com |

_____/

## DEFENDANTS' RESPONSE TO PLAINTIFF'S
## CROSS-MOTION FOR SUMMARY JUDGMENT

# Table of Contents

Table of Authorities ............................................................. ii

I.   Introduction ............................................................. 1

II.  Facts .................................................................... 1

III. Defendant AeroMedia's Registration and Use of the Domain
     Names Does Not Constitute Cybersquatting ................................. 1
     A.   Plaintiff Has Failed To Establish That It Has a Valid Trademark Entitled to
          Protection .......................................................... 2
     B.   Defendant Did Not Register the Domain Names With Bad Faith Intent to Profit
          .................................................................... 3
          1.   There Was No Attempt to Divert Customers from Plaintiff to Defendants 4
          2.   Defendant Did Not Provide False or Misleading Information When
               Registering the Domain Names ................................... 7

IV.  Plaintiff's Claims Under the Lanham Act Fail ............................. 8

V.   There Is No Likelihood of Confusion ..................................... 10
          Relatedness of the Goods or Services ............................... 10
          Actual Confusion ................................................... 11
          Likely Degree of Purchaser Care .................................... 11

Conclusion ..................................................................... 11

# Table of Authorities

**Cases:**

*Bird v. Parsons*, 289 F.3d 865, 877 (6th Cir. 2002) .................................... 10

*Bosley Medical v. Kremer*, 403 F3d 672 (9th Cir. 2005) ................................. 9

*Daddy's Junky Music Stores*, 109 F.3d at 280 ......................................... 10

*Jews for Jesus*, 993 F.Supp. 282 (DNS. 1998) ......................................... 9

*Lang v. Ret. Living Publ'g Co., Inc.*, 949 F.2d 576, 582-83 (2d Cir. 1991) ................. 8

*Leelanau Wine Cellars v Black & Red*, 502 F3d 504 (6th Cir. 2007) ....................... 2

*Lucas Nursery v Grosse*, 359 F3d 806, 809 (6th Circ. 2004) ........................... 2, 9

*Mattel*, 296 F.3d at 900 ............................................................ 8

*Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*, 316 U.S. 203, 205, 86 L. Ed. 1381, 62 S. Ct. 1022, 1942 Dec. Comm'r Pat. 767 (1942) ................................... 8

*OBH*, 86 F.Supp. 2d 176 (WDNY 2006) ............................................... 9

*Prestonettes, Inc. v. Coty*, 264 U.S. 359, 368, 68 L. Ed. 731, 44 S. Ct. 350, 1924 Dec. Comm'r Pat. 508 (1924) ................................................................... 8

*Taubman v. Webfeats*, 319 F3d 770 (6th Cir. 2003) ................................. 9, 10

*Utah Lighthouse Ministry v Fair*, 527 F3d 1045 (10th Cir. 2008) ..................... 9, 10

**Other Authorities:**

15 U.S.C. §1115(a) ................................................................. 2

15 U.S.C. §1125(d) ................................................................. 3

Anticybersquatting Consumer Protection Act ........................................... 1

Lanham Act ........................................................................ 1

S. Rep. No. 106-140 at 5-6 .......................................................... 2

## I. Introduction

Plaintiff cannot use this court to silence Defendants' criticism of Plaintiff by forbidding the use of its name in commentaries critical of its conduct. Despite Plaintiff's dissatisfaction with being criticized on the internet, Plaintiff's claims under the Anticybersquatting Consumer Protection Act ("ACPA") and the Lanham Act fail. Defendants filed a Motion for Summary Judgment and Brief in Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment ("Defendants' Reply Brief"), with accompanying Exhibits. Defendants hereby incorporate those filings by reference herein.

## II. Facts

In support of this response, Defendants rely upon the facts set forth in Defendants' Motion for Summary Judgment and Defendants' Reply Brief, without repeating same herein.

## III. Defendant AeroMedia's Registration and Use of the Domain Names Does Not Constitute Cybersquatting

The ACPA was enacted to provide a means of recourse to stop cybersquatters, which the Senate Report accompanying the ACPA defines as those who: (1) "register well-known brand names as Internet domain names in order to extract payment from the rightful owners of the marks;" (2) "register well-known marks as domain names and warehouse those marks with the hope of selling them to the highest bidder;" (3) "register well-known marks to prey on consumer confusion by misusing the domain name to divert customers from the mark owner's site to the cybersquatter's own site;" (4) "target distinctive marks to defraud consumers, including to engage in counterfeiting activities."[1]

---

[1] S. Rep. No. 106-140 at 5-6.

1

Under the ACPA, a person is liable to the owner of a mark only if the mark owner can establish 1) that it has a valid trademark entitled to protection; 2) its mark is distinctive or famous; 3) the defendant's domain name is identical or confusingly similar to the owner's mark; and 4) the defendant used, registered or trafficked in the domain name with a bad faith intent to profit.[2]

### A.  Plaintiff Has Failed To Establish That It Has a Valid Trademark Entitled to Protection

As an initial matter, Plaintiff's motion is devoid of any proof that it has a valid trademark entitled to protection.  Plaintiff does not have a registered trademark and therefore is not entitled to the presumption of protectability.[3]  Further, Plaintiff has offered no evidence that its common law mark is distinctive or that it has attained a secondary meaning.[4]  At her deposition, the Chief Operating Officer of Plaintiff testified that she did not know whether people in the street, or within a health care facility would know who or what Career Agents Network is.[5]  She further testified that the "general public" that Plaintiff claims recognizes and distinguishes the Career Agents Network Mark refers only to the "online public."[6]

On the contrary, Plaintiff's purported "mark" is nothing more than a reference to a network of career agents.  The USPTO recently required Plaintiff to disclaim the descriptive wording "agents

---

[2]*Lucas Nursery v Grosse*, 359 F3d 806, 809 (6th Circ. 2004).

[3]15 U.S.C. §1115(a).

[4]*Leelanau Wine Cellars v Black & Red*, 502 F3d 504 (6th Cir. 2007).

[5] See **Exhibit H**, at page 80, attached hereto (Exhibit H contained herein is a duplicate of Exhibit H to Defendants' Reply Brief, with the exception that additional deposition transcript pages of Charlotte Byndas have been added for purposes of the within Response).

[6]See Exhibit H, at page 79.

2

network" from its trademark application.[7]

## B. Defendant Did Not Register the Domain Names With Bad Faith Intent to Profit

Finally, despite Plaintiff's best efforts to conjure up "bad faith" on the part of Defendants, Plaintiff has failed to establish that the registration or use of the domain names was done with bad faith *intent to profit*.[8] One only needs to look at the website itself to determine that there is no intent to profit. There are no products or services offered on the website; there are no links to other websites that offer products or services; and there are no advertisements for other products or services. Defendant has never offered to sell the domain names to Plaintiff or to anyone else. Further, it cannot be said that Defendant AeroMedia registered or used the domain names with the intent to profit from the goodwill of Plaintiff. First, Plaintiff has failed to offer any evidence that there is any goodwill associated with "Career Agents Network." Ms. Byndas testified that Plaintiff "believe[s] the goodwill came from the recognition in the marketplace of Health Career Agents."[9] However, she then testified "we [Plaintiff] are not Health Career Agents.[10] Importantly, Plaintiff entity had only existed for a period of six (6) weeks prior to the registration of the domain names. Second, it is difficult to ascertain how the posting of the critical message could profit from the goodwill of Plaintiff.[11]

Defendants have analyzed the bad faith factors enumerated in the ACPA in its Motion for

---

[7] See USPTO Office Action attached hereto as **Exhibit I**.

[8] 15 U.S.C. §1125(d).

[9] See Exhibit H, at pp. 35-36.

[10] *Id.*.

[11] Even more perplexing is the fact that Plaintiff itself has recently registered the domain name careeragentsnetworkscam.com. See Exhibit H at pp. 116-117.

3

Summary Judgment and in its Reply Brief and relies upon the analysis provided therein. However, a deeper analysis into Plaintiff's assertion that Defendant AeroMedia intended to divert customers from Plaintiff's online location and provided false information during registration is necessary.

### 1. There Was No Attempt to Divert Customers from Plaintiff to Defendants

First, Plaintiff attempts to persuade this court that Defendants AeroMedia and White are competitors of Plaintiff and thus, bad faith must be presumed. However, Plaintiff has misrepresented and confused the facts. Defendant White was a <u>customer</u> of Plaintiff in that he paid $49,900.00 for the opportunity to be the owner/operator of his own healthcare recruiting business. The business of Plaintiff is distinct and separate from the business of Defendants and they are not competitors in the marketplace. Plaintiff offers a "business-in-a-box" to individuals who wish to own and operate their own career recruiting business. Ms. Byndas testified that Plaintiff offers this business opportunity to entrepreneurs seeking to act as career agents in a wide variety of fields.[12] Defendant AeroMedia, Inc., the registrant of the Domain Names is engaged in the business of advertising, marketing and public relations and is not engaged in the healthcare recruiting business.[13]

Defendant White has a fifty percent interest in Healthcare Agents, Ltd. ("Healthcare Agents"), an entity which recruits candidates for placement with particular employers and contracts with employers to provide employment candidates. Healthcare Agents recruits and places candidates only in the healthcare industry. Neither Defendant AeroMedia nor White offers any business in a box type product to any consumers. Neither Defendant offers to sell "independently owned recruiting

---

[12] See Exhibit H at p. 37.

[13] See Exhibit G to Defendants' Reply Brief.

4

companies" to anyone.[14] The website linked to the domain names does <u>not</u> offer to sell any businesses to third parties.[15]

Charlotte Byndas, the Chief Operating Officer of Plaintiff testified Plaintiff has no competitors in the marketplace.[16] Ms. Byndas stated: "The closest thing to a competitor is a franchise organization to who we are. I'm not aware of anyone else that offers what we offer the way we offer it."[17]

In an attempt to create "competition" between the parties where none exists, Ms. Byndas testified that Defendant White has diverted potential "entrepreneurs" from Plaintiff, by virtue of a "WARNING" that was linked to the Defendant Domain Names. Ms. Byndas "thinks" that people looking into Plaintiffs' business opportunity stumbled onto the one page warning website and then, inexplicably, ended up somehow contacting Healthcare Agents, Ltd. and being hired as a recruiter (not the owner of a recruiting company).[18] Plaintiffs' theory ignores several pertinent and undisputed facts: 1) No products or services were offered on the Website; 2) No links to other websites that offered products or services were provided; 3) The identity of the author did not appear on the Website; and 4) There was no means of contacting any Defendant, nor any non-party on the Website. As such, it is impossible that the existence of the two domain names resulted in anyone being

---

[14]Defendants incorporate by reference herein Exhibits A through H of its Motion and Brief previously filed as Document No. 43. In addition, see Affidavit of Lawrence White attached as Exhibit G to Defendants' Reply Brief.

[15]Id.

[16]See Exhibit H, at p. 44.

[17]See Exhibit H, at page 45.

[18]See Exhibit H, at pp. 45-46, 65.

5

diverted to Defendants, or to any entity in which any Defendant has an interest.

When asked at her deposition what evidence Plaintiff has that the Domain Names were diverting customers from Plaintiff, Ms. Byndas offered only the fact that non-party Healthcare Agents has been successful in hiring recruiters.[19] Plaintiff has offered no other evidence. While Healthcare Agents did in fact hire several recruiters, they were not directed to it by virtue of Defendant Domain Names. They were in fact, directed to Healthcare Agents by virtue of an online job placement service known as Absolutely Healthcare, or a similar service. This service was specifically negotiated for special member pricing by Health Career Agents, Inc. (the entity from which Plaintiff purchased its assets).[20]

Ms. Byndas further testified that Defendants are competing with Plaintiff by virtue of the non-party, Healthcare Agents, having a "Join Our Team" link on the healthcareagents.com Website.[21] That is not the domain name or website at issue in this litigation. Further, Plaintiff's predecessor not only authorized the healthcareagents.com domain name, it actually created the website content.[22] There are no links to the healthcareagents.com website from the website at issue. Importantly, Plaintiff has not requested any relief, nor pled any cause of action, which would result in the removal or modification of the healthcareagents.com domain name and website. As such, this is simply a red herring.

Finally, Ms. Byndas testified that the "WARNING" website had a negative effect on

---

[19]See Exhibit H, at pp. 64-65.

[20]See Exhibit G to Plaintiff's Reply Brief.

[21]This domain name is owned by Healthcare Agents, Ltd. and Plaintiff claims zero interest in that domain name.

[22]See Exhibit G to Plaintiff's Reply Brief.

6

members of Health Career Agents, Inc. and Career Agents Network. She stated that "the statements that were false statements about being able to derive revenue in the recruiting field hindered other members' ability to recruit people to their teams to be doing business."[23] If the warning had a negative effect on members, that would necessarily include Defendant White. This flies in the face of Plaintiff's argument that Defendant profited or intended to profit from the registration of the Domain Names.

### 2. Defendant Did Not Provide False or Misleading Information When Registering the Domain Names

Plaintiff further attempts to create bad faith by alleging that Defendant Aero Media provided false information when applying to register the Domain Names. Nothing could be further from the truth. When applying for the Domain Names, Defendant AeroMedia was identified as the registrant, Defendant White was identified as the human contact for Defendant AeroMedia. Further, Defendant AeroMedia's correct address, telephone number and e-mail address were provided.[24] As part of the registration process, Defendant was given the opportunity to utilize the services of Privacy Protect, a service which prevents your personal information from being accessed by the general public. It is a frequently used feature to avoid identity theft and unwanted contact by spammers and telemarketers. The fact that Defendant AeroMedia took advantage of this free and legal service does not mean that false or misleading information was provided. It simply means that the general public could not access it.[25]

---

[23] See Exhibit H, at p. 82.

[24] See Exhibits D & F to Defendants' Motion for Summary Judgment.

[25] Plaintiff itself utilizes a third party to register its domain names so that it does not appear as the registrant of its own domain name. Exhibit H at 105-107.

## IV. **Plaintiff's Claims Under the Lanham Act Fail**

Defendants have analyzed the First Amendment implications of Plaintiff's claims thoroughly in their Motion for Summary Judgment and Defendants' Reply Brief. Defendants incorporate that analysis herein by reference.

The Supreme Court has dictated that trademark infringement only prevents the unauthorized use of a trademark in connection with a commercial transaction where a trademark is being used to confuse consumers.[26] As the Second Circuit held, "the Lanham Act seeks to prevent consumer confusion that enables a seller to pass off his goods as the goods of another . . . . Trademark infringement protects only against mistaken *purchasing decisions* and not against confusion generally."[27]

In this case, Defendants have made no commercial use whatsoever of Plaintiff's mark. It used the mark only in the domain name to indicate the subject matter discussed on that particular website. "Trademark rights do not entitle the owner to quash an unauthorized use of the mark by another who is communicating ideas or expressing points of view."[28] That is precisely what Plaintiff is attempting to do.

Use of another's mark in a domain name alone does not make the use a commercial use.[29]

---

[26] *See Prestonettes, Inc. v. Coty*, 264 U.S. 359, 368, 68 L. Ed. 731, 44 S. Ct. 350, 1924 Dec. Comm'r Pat. 508 (1924); *See also,* Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co., 316 U.S. 203, 205, 86 L. Ed. 1381, 62 S. Ct. 1022, 1942 Dec. Comm'r Pat. 767 (1942) (explaining that the main purpose of the Lanham Act is to prevent the use of identical or similar marks in a way that confuses the public about the actual source of goods and services).

[27] *Lang v. Ret. Living Publ'g Co., Inc.*, 949 F.2d 576, 582-83 (2d Cir. 1991) (internal quotation marks and citation omitted) (emphasis added).

[28] *Mattel*, 296 F.3d at 900 (internal quotation marks and citations omitted).

[29] *Bosley Medical v. Kremer*, 403 F3d 672 (9th Cir. 2005); *See also, Lucas, supra.*

8

In order to have trademark protection, the mark must be used in connection with the sale of goods or services, *Bosley*, supra. Plaintiff simply cannot overcome this hurdle.

Plaintiff argues that Defendants' use of Plaintiff's mark is commercial because Defendant White is self-employed as a healthcare recruiter "in competition with Plaintiff." First, there is no true competition, as discussed above. Second and more importantly, it is not a Defendant's occupation or means of income that determines whether the use of another's mark is commercial. Rather, it is whether the use of the mark is in connection with the sale of goods or services. The only use Plaintiff has alleged in its Complaint is the use of Plaintiff's mark and a similar mark in the two domain names registered by Defendant AeroMedia. Focusing on that single use, it is clear that there is no commercial use as there are no goods or services offered, advertised or even mentioned on the one page website linked to the domain names, nor are there any hyperlinks to websites that offer, advertise, or discuss any goods or services.[30]

Plaintiff's reliance on *Jews for Jesus*[31] and *OBH*[32] is misplaced. In *Jews for Jesus*, the court, in ruling that defendant's use of plaintiff's mark resulted in dilution, found that defendant's domain name "jewsforjesus.com" constituted "commercial use" because the site was "a conduit" to another of the defendant's webpages, which conducted fund raising through the sale of merchandise. In *OBH*, the defendants website, which contained plaintiff's trademark in its domain name, contained

---

[30] See *Taubman v. Webfeats*, 319 F3d 770 (6th Cir. 2003); *Lucas Nursery, supra; Bosley Medical, supra;* and *Utah Lighthouse Ministry v Fair*, 527 F3d 1045 (10th Cir. 2008).

[31] 993 F.Supp. 282 (DNS. 1998).

[32] 86 F.Supp. 2d 176 (WDNY 2006).

a hyperlink directing users to defendant's commercial website.[33] No such facts exist here.

The court in T*aubman, supra* stated "as long as [defendant] has no commercial links on either of his websites . . . we find no 'use in connection' . . . to enjoin and the Lanham Act cannot properly be invoked."[34]

Further, even if this court found that Defendant's registration of the domain names constituted a use in connection with the sale of goods or services, the Lanham Act only offers protection if there is a likelihood of confusion. Moreover, the only inquiry is whether there is a likelihood of confusion *between the parties' goods or services*.[35] Case law interpreting the Lanham Act has made it clear that it is irrelevant whether customers would be confused as to the origin of websites, unless there is confusion as to the origin of the respective products.[36]

## V. There Is No Likelihood of Confusion

The likelihood of confusion factors favor Defendants, as addressed in Defendants' Reply Brief. Additionally, the following information is in direct response to Plaintiff's assertions:

***Relatedness of the Goods or Services.*** Plaintiff completely ignores the fact that the use of Plaintiff's mark, only in the two domain names, is not *in connection with the offering or advertising of any goods or services*. Defendant White's occupation as the owner of a healthcare recruiting company does not change this fact.

---

[33]Further, the court's "commercial use" analysis in *OBH* was related to the jurisdictional requirement rather than the "in connection with goods and services" requirement to establish a violation of the Lanham Act. See *Utah Lighthouse Ministry, supra, at* 1054.

[34]*Taubman*, supra, at 775.

[35]*Bird v. Parsons*, 289 F.3d 865, 877 (6th Cir. 2002).

[36]*See also Daddy's Junky Music Stores*, 109 F.3d at 280.

Further, Plaintiff's argument that the audience for both Plaintiff's website and Defendant's website are the same is irrelevant. The same would be true of any domain name that contains the mark of another. For example, the audience for www.disney.com is the same as that for www.disneyreviews.com. The internet user looking for information about Disney may go to either site. The same is true for any gripe site, including this one. This factor favors Defendants.

*Actual Confusion*. Plaintiff has offered no evidence of actual confusion. The only thing Plaintiff offers is a "belief" that its potential investors have stumbled upon the warning and then failed to invest in its opportunity. This factor favors Defendants.

*Likely Degree of Purchaser Care*. Even if Defendant White's occupation could be considered in relation to these factors, can it really be said that any reasonable person would be confused between paying $50,000 to be the owner of an independently owned recruiting company and being hired by a company, at no charge, to act as a healthcare recruiter/consultant? Absolutely not. As such, this factor favors Defendants.

### Conclusion

Based upon the above, it is clear that the registration of the domain names and the posting of a one page "warning" is protected free speech, which cannot be silenced by application of the Lanham Act. The use of Plaintiff's "mark" (if protected) in two domain names does not constitute trademark infringement, as the use is purely non-commercial. Defendant did not offer to sell anything, advertise anything, or provide links to any other site, person or entity that offered to sell or advertise any goods or services. Much like the Defendants in *Taubman, Lucas Nursery, Northland Insurance* and *Bosley Medical*, supra, the domain names and website at issue here were registered and created, respectively, merely to express an opinion about Plaintiff and its business

practices. Such use of another's mark is not protected by the Lanham Act.

Further, there has been no convincing or logical evidence to establish that the domain names were registered with a bad faith intent to profit. Rather, the domain names were registered with the intent that persons on the internet would be aware of the content of the webpage where an opinion about Plaintiff was posted. While Plaintiff may seek to prevent any negative comments about it on the internet or elsewhere, the facts of this case simply do not provide Plaintiff with an avenue for doing so.

/s/ Charles E. Clos
Clos, Russell & Wirth, P.C. (P43380)
35551 Ford Road, Suite 100
Westland, MI 48185
(734) 326-2101
cclos@lawyersmichigan.com

### Certificate of Service

I hereby certify that on February 12, 2010, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

jlowenstein@jaffelaw.com; and
mkhoury@jaffelaw.com

/s/ Charles E. Clos
Clos, Russell & Wirth, P.C.
35551 Ford Road, Suite 100
Westland, MI 48185
(734) 326-2101
cclos@lawyersmichigan.com
P43380